**GIBSON, DUNN & CRUTCHER LLP**
SAMUEL G. LIVERSIDGE (*pro hac vice*)
S. CHRISTOPHER WHITTAKER (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  213-229-7000
Facsimile:  213-229-7520
sliversidge@gibsondunn.com
cwhittaker@gibsondunn.com

**GIBSON, DUNN & CRUTCHER LLP**
RACHEL S. BRASS (*pro hac vice*)
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone:  415-393-8200
Facsimile:  415-393-8306
rbrass@gibsondunn.com

**DICKINSON WRIGHT PLLC**
JOHN P. DESMOND (SBN 5618)
MICHAEL N. FEDER (SBN 7332)
GABRIEL A. BLUMBERG (SBN 12332)
100 West Liberty Street, Suite 940
Reno, NV 89501
Telephone:  775-343-7500
Facsimile:  844-670-6009
jdesmond@dickinsonwright.com
mfeder@dickinsonwright.com
gblumberg@dickinsonwright.com

*Attorneys for Defendants*
*EVERI HOLDINGS INC. and*
*EVERI PAYMENTS INC.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| KOIN MOBILE, LLC, a Nevada limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> EVERI HOLDINGS INC., f/k/a Global Cash Access Holdings, Inc., a Delaware Corporation, and EVERI PAYMENTS INC., f/k/a Global Cash Access, Inc., a Delaware Corporation, <br><br> Defendants. | CASE NO. 3:24-cv-00178-ART-CSD <br><br> **DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> **ORAL ARGUMENT REQUESTED** |

Defendants Everi Holdings Inc. and Everi Payments Inc. (collectively, "Everi"), by and through their counsel, hereby move this Court for an Order dismissing with prejudice Plaintiff Koin Mobile, LLC's ("Koin") complaint.  This Motion is made under Fed. R. Civ. P. 12(b)(6) and is based on the attached Memorandum of Points and Authorities and supporting documentation, the papers and pleadings on file, any oral argument this Court may allow, and any other matter that may be considered by this Court on this Motion.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................1

II. BACKGROUND ...........................................................................................3

    A.    Cash-Access Services For Casinos ...............................................3

    B.    Everi's Contract With Baldini's.....................................................5

    C.    Everi Sues Koin In State Court And Koin Files This Lawsuit In Retaliation ........5

    D.    Koin's Allegations Of Anticompetitive Conduct ....................................6

III. LEGAL STANDARD ...................................................................................7

IV. ARGUMENT ...............................................................................................7

    A.    Koin Fails To Plead A Properly-Defined Relevant Market And Thus All Of Its Claims Should Be Dismissed .............................7

    B.    Koin's Sherman Act Section 1 Claims Should Be Dismissed ..............................10

        1.    Koin's Tying Claim Should Be Dismissed .................................10

        2.    Koin's Exclusive Dealing Claim Should Be Dismissed ...........................17

    C.    Koin's Sherman Act Section 2 Claims Should Be Dismissed ..............................21

        1.    Koin's Section 2 Claims Fail For The Same Reasons As Its Section 1 Claims .............................21

        2.    Koin's Monopolization Claim Fails For Additional Reasons...................22

    D.    Koin Fails To Allege Antitrust Standing ................................26

    E.    Koin's State Law Claims Must Also Be Dismissed ................................27

V. CONCLUSION .............................................................................................28

## <u>TABLE OF AUTHORITIES</u>
### Cases

*Advanced Comput. Servs., Inc. v. MAI Sys. Corp.*,
  845 F. Supp. 356 (E.D. Va. 1994) ...................................................12

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
  836 F.3d 1171 (9th Cir. 2016) ...........................................12, 14, 18

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*,
  592 F.3d 991 (9th Cir. 2010) .....................................................18

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
  190 F.3d 1051 (9th Cir. 1999) ...................................................26, 27

*Apple, Inc. v. Psystar Corp.*,
  586 F. Supp. 2d 1190 (N.D. Cal. 2008) .......................3, 8, 23, 24, 25, 26

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...............................................................7

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
  459 U.S. 519 (1983) ..............................................................26

*In re ATM Fee Antitrust Litig.*,
  686 F.3d 741 (9th Cir. 2012) .....................................................26

*In re ATM Fee Antitrust Litig.*,
  768 F. Supp. 2d 984 (N.D. Cal. 2009) ......................................23, 24, 26

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
  2019 WL 633008 (N.D. Cal. Feb. 14, 2019) .........................................17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................7

*Bhan v. NME Hosps., Inc.*,
  772 F.2d 1467 (9th Cir. 1985) ....................................................27

*Blough v. Holland Realty, Inc.*,
  574 F.3d 1084 (9th Cir. 2009) ................................................17, 20

*Boulware v. Nev. Dep't of Human Res.*,
  960 F.2d 793 (9th Cir. 1992) .....................................................28

*Brantley v. NBC Universal, Inc.*,
  675 F.3d 1192 (9th Cir. 2012) ....................................................11

*Cap. Temps., Inc. of Hartford v. Olsten Corp.*,
  506 F.2d 658 (2d Cir. 1974).......................................................13

*Cascade Health Sols. v. PeaceHealth*,
  515 F.3d 883 (9th Cir. 2008) ......................................................8

*Collier v. New York*,
  2006 WL 8442757 (C.D. Cal. Nov. 1, 2006).........................................13

*Colonial Med. Grp., Inc. v. Cath. Health Care W.*,
444 F. App'x 937 (9th Cir. 2011) ................................................................... 10

*Colonial Med. Grp., Inc. v. Cath. Healthcare W.*,
2010 WL 2108123 (N.D. Cal. May 25, 2010) ................................................. 9

*Coronavirus Rep. v. Apple, Inc.*,
85 F.4th 948 (9th Cir. 2023) ............................................................... 1, 8, 21

*Data Gen. Corp. v. Grumman Sys. Support Corp.*,
36 F.3d 1147 (1st Cir. 1994) ........................................................... 12, 13

*Dominick v. Collectors Universe, Inc.*,
2012 WL 6618616 (C.D. Cal. Dec. 18, 2012) .......................................... 14

*Eagle v. Star-Kist Foods, Inc.*,
812 F.2d 538 (9th Cir. 1987) ........................................................... 3, 27

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
504 U.S. 451 (1992) ...................................................................... 23

*Eastman v. Quest Diagnostics Inc.*,
2015 WL 7566805 (N.D. Cal. Nov. 25, 2015) ................................... 18, 22

*Eastman v. Quest Diagnostics Inc.*,
2016 WL 1640465 (N.D. Cal. Apr. 26, 2016) .......................................... 19

*Eastman v. Quest Diagnostics Inc.*,
724 F. App'x 556 (9th Cir. 2018) ............................................. 19, 20, 22

*Edwards Vacuum, LLC v. Hoffman Instrumentation Supply, Inc.*,
556 F. Supp. 3d 1156 (D. Or. 2021) .................................................. 20

*Eisai, Inc. v. Sanofi Aventis U.S., LLC*,
821 F.3d 394 (3d Cir. 2016) ........................................................ 19, 20

*Epic Games, Inc. v. Apple, Inc.*,
67 F.4th 946 (9th Cir. 2023) .......................................... 11, 23, 24, 25, 26

*Famous Brands, Inc. v. David Sherman Corp.*,
814 F.2d 517 (8th Cir. 1987) ......................................................... 14

*Feitelson v. Google Inc.*,
80 F. Supp. 3d 1019 (N.D. Cal. 2015) ............................................. 22

*Foremost Pro Color, Inc. v. Eastman Kodak Co.*,
703 F.2d 534 (9th Cir. 1983) ......................................................... 22

*Fowler Packing Co., Inc. v. Lanier*,
844 F.3d 809 (9th Cir. 2016) ........................................................... 6

*FTC v. Qualcomm Inc.*,
969 F.3d 974 (9th Cir. 2020) ......................................................... 27

*Glob. Disc. Travel Servs., LLC v. Trans World Airlines, Inc.*,
960 F. Supp. 701 (S.D.N.Y. 1997) .................................................. 25

*Hicks v. PGA Tour, Inc.*,
  897 F.3d 1109 (9th Cir. 2018) ................................................................................8, 10

*Hip Hop Beverage Corp. v. Monster Energy Co.*,
  733 F. App'x 380 (9th Cir. 2018) ...........................................................................20, 21

*Hirsh v. Martindale-Hubbell, Inc.*,
  674 F.2d 1343 (9th Cir. 1982) ..........................................................................................11

*ILC Peripherals Leasing Corp. v. Int'l Bus. Machs. Corp.*,
  458 F. Supp. 423 (N.D. Cal. 1978) ...................................................................................15

*Ill. Toll Works Inc. v. Indep. Ink, Inc.*,
  547 U.S. 28 (2006) ...........................................................................................................11, 14

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
  125 F.3d 1195 (9th Cir. 1997) ............................................................................................14

*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*,
  466 U.S. 2 (1984) ...................................................................................11, 12, 15, 20

*Jensen Enters. Inc. v. Oldcastle Precast Inc.*,
  2009 WL 440492 (N.D. Cal. Feb. 23, 2009) .....................................................................28

*Joseph v. Amazon.com, Inc.*,
  46 F. Supp. 3d 1095 (W.D. Wash. 2014) ..........................................................................12

*L.A. Land Co. v. Brunswick Corp.*,
  6 F.3d 1422 (9th Cir. 1993) ................................................................................................16

*In re Lithium Ion Batteries Antitrust Litig.*,
  2014 WL 4955377 (N.D. Cal. Oct. 2, 2014) .....................................................................28

*Manwin Licensing Int'l S.A.R.L. v. ICM Registry, LLC*,
  2013 WL 12123772 (C.D. Cal. Feb. 26, 2013) .................................................................27

*Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*,
  2022 WL 2791201 (E.D. Cal. July 15, 2022) ....................................................................14

*Newcal Indus., Inc. v. Ikon Office Sol.*,
  513 F.3d 1038 (9th Cir. 2009) ............................................................................................24

*Ohio v. Am. Express Co.*,
  585 U.S. 529 (2018) ..............................................................................................................8

*Paladin Assocs., Inc. v. Mont. Power Co.*,
  328 F.3d 1145 (9th Cir. 2003) ............................................................................................12

*PNY Techs., Inc. v. SanDisk Corp.*,
  2014 WL 1677521 (N.D. Cal. Apr. 25, 2014) ...................................................................22

*ReadyLink Healthcare, Inc. v. State Compensation Ins. Fund*,
  754 F.3d 754 (9th Cir. 2014) ................................................................................................6

*Rebel Oil, Inc. v. Atl. Richfield Co.*,
  51 F.3d 1421 (9th Cir. 1995) ..............................................................................14, 15, 16

*Reisner v. Gen. Motors Corp.*,
   511 F. Supp. 1167 (S.D.N.Y. 1981), *aff'd*, 671 F.2d 91 (2d Cir. 1982) ................................20

*Rick-Mik Enters., Inc. v. Equilon Enters. LLC*,
   532 F.3d 963 (9th Cir. 2008) ................................16

*Robert's Waikiki U-Drive, Inc. v. Budget Rent-a-Car Sys., Inc.*,
   732 F.2d 1403 (9th Cir. 1984) ................................11, 17

*Rutman Wine Co. v. E. & J. Gallo Winery*,
   829 F.2d 729 (9th Cir. 1987) ................................2, 17

*Safeway Inc. v. Abbott Lab'ys*,
   761 F. Supp. 2d 874 (N.D. Cal. 2011) ................................15

*Sidibe v. Sutter Health*,
   4 F. Supp. 3d 1160 (N.D. Cal. 2013) ................................14

*Sightline Payments, LLC v. Glob. Cash Access Holdings, Inc.*,
   2010 WL 3156048 (D. Nev. Aug. 9, 2010) ................................20

*Sobrato v. Prudential Ins. Co. of Am.*,
   632 F.2d 786 (9th Cir. 1980) ................................14

*Spectrum Sports, Inc. v. McQuillan*,
   506 U.S. 447 (1993) ................................21

*Tampa Elec. Co. v. Nashville Coal Co.*,
   365 U.S. 320 (1961) ................................2, 18, 19

*Tanaka v. Univ. of S. Cal.*,
   252 F.3d 1059 (9th Cir. 2001) ................................2, 8, 10

*Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*,
   875 F.2d 1369 (9th Cir. 1989) ................................10

*Tic-X-Press, Inc. v. Omni Promotions Co. of Ga.*,
   815 F.2d 1407 (11th Cir. 1987) ................................13

*Todd v. Exxon Corp.*,
   275 F.3d 191 (2d Cir. 2001) ................................23

*Twin City Sportservice, Inc. v. Charles O. Finley & Co.*,
   676 F.2d 1291 (9th Cir. 1982) ................................8

*Ungar v. Dunkin' Donuts of Am., Inc.*,
   531 F.2d 1211 (3d Cir. 1976) ................................13

*Unijax, Inc. v. Champion Int'l, Inc.*,
   683 F.2d 678 (2nd Cir. 1982) ................................12

*United States v. Loew's*,
   371 U.S. 38 (1962) ................................11

*United States v. Mercedes-Benz of N. Am., Inc.*,
   517 F. Supp. 1369 (N.D. Cal. 1981) ................................13

*United States v. Microsoft Corp.*,
    253 F.3d 34 (D.C. Cir. 2001) ................................................................17, 22

*W. Parcel Exp. v. United Parcel Serv. of Am., Inc.*,
    190 F.3d 974 (9th Cir. 1999) ....................................................................16

*Williams v. I.B. Fischer Nev.*,
    999 F.2d 445 (9th Cir. 1993) ....................................................................22

*Witt Co. v. RISO, Inc.*,
    948 F. Supp. 2d 1227 (D. Or. 2013) .................................................14, 16

## Statutes

Nev. Rev. Stat. Ann. § 598A.050 ...............................................................28

## Other Authorities

Robert E. Jones, *Federal Civil Trials and Evidence* § 8:875 (Rutter Group June
    2022) .........................................................................................................6

## Rules

Fed. R. Civ. P. 12(b)(6).................................................................................7

## Treatises

P. Areeda & H. Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles
    and Their Application* ¶ 564b (4th & 5th eds. 2024) ..........................23, 24

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Through this action, Plaintiff Koin Mobile seeks to transform the parties' contract dispute concerning a single casino into a sweeping antitrust lawsuit alleging that defendant Everi monopolized and attempted to monopolize multiple alleged markets across the country.  Koin's claims are misguided and flawed as a matter of law, and they should all be dismissed.

For years Everi has provided innovative cash-access services to casinos, such as ATMs and kiosks, that allow patrons to access funds quickly and securely right from the casino floor. One such casino is Baldini's Sports Casino ("Baldini's"), which awarded Everi the exclusive right to provide cash-access services to Baldini's patrons after conducting an in-depth and competitive bidding process.  In 2023, however, Koin convinced Baldini's to breach that contract by agreeing to use Koin's digital wallet.  A digital wallet—just like traditional cash-access services—enables patrons to access their funds without leaving the casino.  Everi sued Koin in Nevada state court for intentional interference, and the state court recently denied Koin's motion to dismiss.  Koin responded by filing baseless antitrust claims in this Court.

Koin's basic allegation is that Everi's contracts with casinos like Baldini's contain unlawful "tying" and "exclusive dealing" provisions, and that Everi has attempted to monopolize and monopolized the markets for digital wallets.  According to Koin, Everi has used its purported power in the market for cash-access services to force casinos and their patrons to adopt Everi's digital wallet, the CashClub Wallet.  Koin also says Everi's alleged "exclusive dealing" contracts have foreclosed a substantial amount of competition among digital-wallet providers like Koin. Koin's claims fail as a matter of law for each of the following reasons.

*First*, as the Ninth Circuit has made clear, "[f]ailing to define a relevant market alone is fatal to an antitrust claim." *Coronavirus Rep. v. Apple, Inc*., 85 F.4th 948, 957 (9th Cir. 2023). Among other things, a relevant market must include the product at issue and all reasonably interchangeable substitutes.  Here, all of Koin's proposed market definitions rest on the assumption that cash-access services and digital wallets are in *distinct* markets (i.e., various "Cash-Access Markets" and "Digital-Wallet Markets").  But Koin's own allegations directly contradict that core

premise.  Indeed, Koin alleges, repeatedly, that digital wallets and cash-access services compete with each other as "alternative[s]" (*e.g.*, Compl. ¶¶ 61–62), and that digital wallets are "poised to replace nearly all" cash-access services (*id*. ¶ 76).  These allegations, taken as true, clearly demonstrate that digital wallets are substitutes to cash-access services and thus these products belong in the *same*, not distinct, product markets.  Because Koin's own allegations destroy the plausibility of all its asserted markets, its antitrust claims should be dismissed in full.  *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001) ("Failure to identify a relevant market is a proper ground for dismissing a Sherman Act claim.").

*Second*, Koin alleges that Everi has unlawfully tied the availability of its cash-access services to its CashClub Wallet.  To plead its tying theory, Koin must allege that Everi "conditioned" the sale of its cash-access services on casinos' adoption of Everi's CashClub Wallet.  In other words, Koin must allege that casinos could not obtain Everi's cash-access services *unless* they also agreed to use Everi's digital wallet.  Koin does not (and cannot) allege such facts.  Nowhere in the complaint does Koin allege Everi ever refused to sell a casino a cash-access product unless the casino also agreed to use the CashClub Wallet.  Koin's tying theory fails as a matter of law.

*Third*, Koin contends Everi has entered into "exclusive dealing" arrangements with casinos that require them to offer only Everi's digital wallet to patrons.  But exclusive dealing arrangements are not, "standing alone, a violation of antitrust laws, and in most circumstances do[] not adversely affect competition in the market."  *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 735 (9th Cir. 1987).  Courts condemn exclusive contracts only in the rare case where a plaintiff can show they "foreclose competition in a substantial share of the line of commerce affected."  *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961).  Here, Koin's allegations fall woefully short of alleging the required "substantial" foreclosure.  Indeed, Koin identifies only two specific casinos in the entire country (Baldini's and the Eureka Casino in Las Vegas) that supposedly entered into an exclusive arrangement with Everi, and it offers no facts indicating how many casinos in the alleged market have such arrangements.  Further, far from alleging that competition has been stifled in the alleged digital-wallet markets, Koin concedes that

there are multiple digital-wallet competitors operating in the market, and that *Koin itself* has provided digital-wallet services to multiple casinos.

*Fourth*, Koin's attempted monopolization and monopolization claims merely parrot the same flawed market definitions and tying and exclusive dealing theories already discussed, and thus they must be dismissed on the same grounds. Koin's monopolization claim fails for the additional reason that it relies on a facially implausible single-brand "aftermarket." "Single-brand markets are … extremely rare." *Apple, Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1198 (N.D. Cal. 2008). And here, Koin's proposed aftermarket—a gerrymandered and illogical proposed market limited to only those casinos that have chosen to offer Everi's digital wallet—does not come close to meeting the strict standards for pleading a plausible aftermarket in the Ninth Circuit.

*Finally*, all of Koin's claims should be dismissed for the independent reason that Koin lacks antitrust standing. It is blackletter law that an antitrust plaintiff "must be either a consumer of the alleged violator's goods or services or a competitor of the alleged violator in the restrained market." *Eagle v. Star-Kist Foods, Inc.*, 812 F.2d 538, 540 (9th Cir. 1987). Koin is neither. It is not an Everi customer. Nor is it in the allegedly restrained markets as it has defined them (digital-wallet markets). Koin contends that its digital wallet is a "general-purpose wallet." Compl. ¶¶ 11, 85. But, remarkably, Koin defines the alleged digital-wallet markets as *excluding* general-purpose digital-wallet providers like itself. Compl. ¶ 160 (digital-wallet markets are comprised of "providers of gaming digital wallets—*as distinct from general-purpose digital-wallet providers*" (emphasis added)). Thus, Koin cannot allege that it has been harmed by any of the alleged anticompetitive conduct because it has removed itself from the allegedly restrained markets.

Koin's claims fail as a matter of law for these and many other reasons, as explained further below, and thus its complaint should be dismissed.

## II.  BACKGROUND[1]

### A.  Cash-Access Services For Casinos

Everi provides casino operators with a suite of financial products and services that facilitate

---

[1] Everi relies on the allegations in Koin's complaint in setting out the factual background. Everi disputes Koin's allegations and accepts them solely for purposes of this motion.

secure cash-access transactions, including cash-access services that enable casino patrons to access their funds quickly and securely from the casino floor. *See* Compl. ¶ 49. For instance, Everi offers ATMs and kiosks that permit patrons to withdraw cash using their debit or credit cards, take a cash advance on their credit card, or purchase tickets or vouchers that can be redeemed for cash or gaming chips at the casino cage. *See* Compl. ¶¶ 49, 52, 123.

For patrons who prefer a cashless and contactless gaming experience, Everi also offers a digital wallet—called the CashClub Wallet—as an alternative tool for patrons to access their funds. Compl. ¶ 13. The Nevada Gaming Commission authorized the use of digital payments for gaming in June 2020, and Everi launched the CashClub Wallet thereafter. *Id.* ¶ 77.

In general, "a digital wallet is a smartphone application." Compl. ¶ 63. Using the app, "a patron connects to his or her debit or credit card, PayPal, or other payment sources to fund the wallet. The patron can then use those funds from the smartphone app at participating casinos." *Id.* Digital wallets "allow a patron to fund game play from his phone, without the disruption of using a self-service kiosk or other cash-access system." *Id.* ¶ 64. They also allow patrons to "use one tool for all payments and purchases at the casino resort, drawing from all interoperable funding sources." *Id.* ¶ 66.

According to Koin, there are multiple types of digital wallets. One is a "gaming-specific wallet," which is "not capable of general use outside casinos" and "cannot support non-gaming financial transactions." Compl. ¶¶ 85–86. Another is a "general-purpose wallet," which has "no wall between its general-purpose and gaming features," and thus can be used outside the casino "anywhere major credit cards are accepted." *Id.* ¶¶ 11, 85, 88. Koin alleges that Everi's CashClub Wallet is a "gaming-specific wallet," while Koin's digital wallet—the Koin Wallet—is "a general-purpose wallet." *Id.* ¶ 85; *see also id.* ¶¶ 11, 14 (describing Koin Wallet as a general-purpose digital wallet).

Koin alleges that it was formed in 2021 to develop a digital wallet. Compl. ¶¶ 78–80. In 2021 and 2022, Everi and Koin discussed a possible collaboration and software licensing agreement, which never materialized. *Id.* ¶ 100. Koin then launched its Koin Wallet. *Id.* ¶¶ 93, 100.

**B.     Everi's Contract With Baldini's**

Everi negotiates and enters into cash-access service agreements with casino operators.  As relevant here, Everi entered into a contract with Baldini's, a casino in Sparks, Nevada, in July 2013 to provide cash-access and related services to Baldini's and its patrons.  The contract provides that Everi shall process cash-access transactions and all other cash-advance or cash-access services, including "quasi-cash" transactions, for patrons during the contract term.  Compl. ¶ 18.  The contract further provides that Everi shall be the sole and exclusive provider of each service and that Baldini's shall not allow any other party to provide a service that is substantially similar to any service being provided by Everi.  *Id.*  After Koin launched its own digital wallet, it succeeded in inducing Baldini's to breach its contract with Everi.  *Id.* ¶¶ 93, 105, 108.  In June 2023, Koin and Baldini's announced the Koin Wallet would be available for use at Baldini's.  *Id.* ¶¶ 105, 108.

**C.     Everi Sues Koin In State Court And Koin Files This Lawsuit In Retaliation**

On August 30, 2023, Everi sued Koin and Baldini's in Nevada state court, alleging multiple contract claims against Baldini's and an intentional interference claim against Koin.  *See Everi Payments Inc. v. Strategic Gaming Management, LLC fka Baldini's LLC, Marker Trax, LLC, and Koin Mobile, LLC*, No. CV23-01538 (Nev. Dist. Ct., Washoe Cnty.); Compl. ¶ 109.  Koin filed a motion to dismiss, arguing—in direct contradiction of one of the central theories in Koin's complaint here—that Everi's contract with Baldini's is not an exclusive arrangement with respect to digital wallets and in fact allows Koin to provide digital-wallet services to Baldini's.  *See Everi Payments*, No. CV23-01538, Defendants' Motion to Dismiss at 8 (Oct. 13, 2023) ("[t]he use of the virtual Koin Wallet at Baldini's … does not breach the agreements").  On April 4, 2024, the state court denied Koin's motion to dismiss, except as to one claim against Baldini's.  *See Everi Payments*, No. CV23-01538, Order on Motion to Dismiss (Apr. 4, 2024).  Two weeks later, Koin filed this lawsuit alleging a number of federal and state antitrust claims.  Koin then filed its answer and counterclaims in state court asserting the same antitrust violations as those asserted here.  *See Everi Payments*, No. CV23-01538, Defendant Koin's Answer and Counterclaims (May 3, 2024).[2]

---

[2]  The Court may judicially notice documents filed in a collateral state court action.  *See ReadyLink Healthcare, Inc. v. State Compensation Ins. Fund*, 754 F.3d 754, 756, n.1 (9th Cir. 2014); *see also*

**D.   Koin's Allegations Of Anticompetitive Conduct**

All of Koin's claims are based on the same core theory: that Everi's cash-access services contracts purportedly constitute "tying" and "exclusive dealing" arrangements.  Compl. ¶¶ 5, 32. According to Koin, Everi has used such arrangements to "port[] its dominant market share in the cash-access markets to the markets for digital wallets" (*id.* ¶ 22), and therefore "foreclose[d] competition" for digital wallets (*id.* ¶ 137).  To support these claims, Koin attempts to allege more than 40 purportedly relevant markets, distinguishing between so-called "cash-access" markets and "digital-wallet" markets.

**Alleged Cash-Access Markets.**  Koin alleges the existence of a "U.S. Casino Cash-Access Market," in which cash-access providers compete to provide cash-access services to casinos nationwide.  Compl. ¶ 151.  Koin also alleges the existence of "at least" 20 "Local Patron Cash-Access Markets," in which cash-access providers compete to provide "one-off cash-access transactions to casino patrons."  *Id.* ¶¶ 155, 158.

**Alleged Digital-Wallet Markets.**  Koin alleges the existence of a "U.S. Casino Digital-Wallet Market," in which "gaming digital wallets" compete to provide casinos in the U.S. with digital wallets.  Compl. ¶ 160.  Koin also alleges the existence of "Local Patron Digital-Wallet Markets," in which digital-wallet providers compete "to provide gaming digital wallets to casino patrons."  *Id.* ¶ 164.  In the alternative to the Local Patron Digital-Wallet Markets, Koin alleges the existence of an "Everi-Casino Digital-Wallet Aftermarket."  *Id.* ¶ 168.  Koin alleges that the aftermarket is "for digital wallets at casinos under contract with Everi," in which casino patrons who have brand-loyalty to specific casinos are "locked-in" to using Everi's CashClub Wallet.  *Id.* ¶¶ 168, 171.

Relying on these asserted markets, Koin alleges that Everi has violated the antitrust laws in the following ways:

*First*, Koin alleges that Everi has used its purported market power in the cash-access markets to impose unlawful tying restrictions in its cash-access service contracts with casinos.

---

Robert E. Jones, *Federal Civil Trials and Evidence* § 8:875 (Rutter Group June 2022) ("Judicial notice is particularly appropriate for court records … in prior litigation related to the case before it.") (citing *Fowler Packing Co., Inc. v. Lanier*, 844 F3d 809, 813, n.2 (9th Cir. 2016)).

Compl. ¶¶ 179–82.  According to Koin, Everi has "condition[ed] access to its cash-access system on casinos' agreement to use Everi's … digital wallet," in violation of the Section 1 of the Sherman Act and Section 3 of the Clayton Act.  *Id.* ¶¶ 182–86.  Koin alleges that the purported tying arrangement constitutes a per se violation of the antitrust laws (*id.* ¶¶ 244–53) or, in the alternative, violates the antitrust laws under the "rule of reason" (*id.* ¶¶ 254–63).

*Second*, Koin alleges that these same cash-access service contracts with casinos constitute exclusive dealing agreements that have "substantially foreclosed competition" in the digital-wallet markets "by precluding [casinos] from obtaining alternative digital wallets," in violation of Section 1 of the Sherman Act and Section 3 of the Clayton Act.  Compl. ¶¶ 268–69; *id.* ¶¶ 187–93.

*Third*, Koin alleges that through this allegedly anticompetitive conduct (i.e., tying and exclusive dealing), Everi has attempted to monopolize the digital-wallet markets in violation of Section 2 of the Sherman Act.  Compl. ¶ 278.  In the alternative to its attempted monopolization claim, Koin alleges that the purported anticompetitive conduct has allowed Everi to actually monopolize the digital-wallet aftermarket in violation of Section 2 of the Sherman Act.  *Id.* ¶ 284.

Koin asserts analogous claims under Nevada antitrust law.  Compl. ¶¶ 290–308.

### III.    LEGAL STANDARD

The Court should dismiss any cause of action that fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).  Rather, the allegations in a complaint "must be enough to raise a right to relief above the speculative level."  *Id.* at 555.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### IV.    ARGUMENT

**A.    Koin Fails To Plead A Properly-Defined Relevant Market And Thus All Of Its Claims Should Be Dismissed**

 "A threshold step in any antitrust case" under Sections 1 and 2 of the Sherman Act and Section 3 of the Clayton Act "is to accurately define the relevant market."  *Coronavirus Rep.*, 85 F.4th at 955; *see also Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 913 (9th Cir. 2008) (per

1   se tying); *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 676 F.2d 1291, 1302 (9th Cir.

2   1982) (exclusive dealing); *Apple, Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1195–96 (N.D. Cal.

3   2008) (Section 3 of the Clayton Act).  "Market definition is essential to any antitrust case because

4   'without a definition of the market there is no way to measure the defendant's ability to lessen or

5   destroy competition.'"  *Coronavirus Rep.*, 85 F.4th at 955 (quoting *Ohio v. Am. Express Co.*

6   ("*Amex*"), 585 U.S. 529, 543 (2018)).  Courts routinely dismiss complaints where the alleged

7   market definitions are "'facially unsustainable.'"  *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1117,

8   1120 (9th Cir. 2018); *see also Tanaka*, 252 F.3d at 1063 ("Failure to identify a relevant market is

9   a proper ground for dismissing a Sherman Act claim.").

10         A properly defined relevant market must include "the pool of goods or services that enjoy

11   reasonable interchangeability of use and cross-elasticity of demand."  *Tanaka*, 252 F.3d at 1063.

12   In other words, the relevant market must include "the product at issue as well as all economic

13   substitutes for the product," and "encompass[] the group or groups of sellers or producers who

14   have actual or potential ability to deprive each other of significant levels of business."  *Hicks*, 897

15   F.3d at 1120 (quotation marks omitted); *see also Psystar*, 586 F. Supp. 2d at 1196 (products are in

16   the same market when "consumers view those products as reasonable substitutes for each other

17   and would switch among them in response to changes in relative prices").

18         Koin's alleged markets are facially deficient and fail to meet these requirements, requiring

19   dismissal of the complaint.  The core premise of each of Koin's asserted markets is its allegation

20   that "cash-access systems and digital-wallet products … exist in separate markets" because "digital

21   wallets are not reasonably interchangeable with cash access."  Compl. ¶¶ 147, 180.  However,

22   these conclusory allegations are directly contradicted by a host of other allegations that

23   *acknowledge* digital wallets and cash-access services are substitutes that compete with each other.

24         The complaint makes clear that digital wallets and cash-access services serve the same

25   "roughly equivalent" purposes—i.e., are interchangeable—from the perspective of both casinos

26   and patrons. *See Colonial Med. Grp., Inc. v. Cath. Healthcare W.*, 2010 WL 2108123, at *3 (N.D.

27   Cal. May 25, 2010) ("[i]nterchangeability implies that one product is roughly equivalent to another

28   for the use to which it is put" (quotation marks omitted)).  For casinos, Koin alleges that both cash-

access services and digital wallets provide methods to manage cash and ensure patrons have access to funds. *Compare* Compl. ¶¶ 50, 152 (cash-access services "ease and accelerate patron access to cash and chips" and "give the casinos financial incentives and cash- and casino-management tools"), *with id.* ¶ 161 (digital wallets "aid[] in casino management and reduce[] casino administrative costs," and "ensure[] a steady flow of funds to casino patrons"). And for patrons, the complaint acknowledges that both products ensure funding is available for casino gameplay. *Compare id.* ¶ 49 (cash-access services "allow patrons to withdraw money" to fund casino spend), *with* ¶ 6 ("digital wallets allow casino patrons to fund their in-casino gaming by linking to external funding sources").

Indeed, Koin expressly acknowledges and alleges that digital wallets are a "viable alternative"—in other words, a *substitute* for—cash-access services. Compl. ¶¶ 61–62. And, conceding that these products compete with each other, Koin alleges that digital wallets are taking market share from, and predicts they will someday replace, cash-access services. For example, Koin alleges:

- "[T]he burgeoning market for digital wallets poses an existential threat to the value of Everi's [purported] dominance of gaming cash access," since "more casinos and patrons using digital wallets means fewer casinos and patrons using Everi's cash-access systems." *Id.* ¶ 57.

- "[D]igital wallets threaten[] the value of [Everi's] cash-access dominance." *Id.* ¶ 98.

- After COVID-19, casinos were "more motivated than ever to find a viable alternative to cash-based systems. Enter digital wallets." *Id.* ¶¶ 61–62.

- "Like emails replaced most letters, digital wallets are poised to replace nearly all cash-based elements of casino play and other activities." *Id.* ¶ 76.

- "[T]he rising digital-wallet markets threaten to relegate cash-access kiosks to history's trash heap of payphones and typewriters." *Id.* ¶ 129.

With these allegations, *Koin* concedes that digital wallets and cash access are substitutes that "have [the] actual or potential ability to deprive each other of significant levels of business." *Hicks*, 897 F.3d at 1120 (quotation marks omitted). As a result, to be plausible, Koin's proposed

relevant markets must be defined to include *both* products.  But Koin has defined *all* of its proposed markets to include only one of the products.  Koin's omission of interchangeable products from its market definitions renders them facially deficient, and the Court should thus dismiss all of Koin's claims.  *See id.* at 1121–23 (affirming dismissal of claims based on market definitions that "omit[ted] many economic substitutes"); *Tanaka*, 252 F.3d at 1064 (affirming dismissal of claims based on proposed "UCLA women's soccer program" market because that market excluded "similar programs [which] compete in the recruiting of student-athletes and, hence, are interchangeable with each other for antitrust purposes"); *Colonial Med. Grp., Inc. v. Cath. Health Care W.*, 444 F. App'x 937, 938 (9th Cir. 2011) (affirming dismissal of claims based on market that "fail[ed] to encompass the product at issue as well as all economic substitutes for the product" (quotation marks and emphasis omitted)).[3]

**B.     Koin's Sherman Act Section 1 Claims Should Be Dismissed**

Even if Koin had alleged facially plausible relevant markets (it has not), Koin's Section 1 claims should be dismissed because the complaint fails to allege the required elements for tying and exclusive dealing.

**1.     Koin's Tying Claim Should Be Dismissed**

"Tying is defined as an arrangement where a supplier agrees to sell a buyer a product (the tying product), but only on the condition that the buyer also purchases a different (or tied) product." *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1199 (9th Cir. 2012) (quotation marks omitted).  The potential injury to competition threatened by this practice is that the tying arrangement will "either harm existing competitors or create barriers to entry of new competitors

---

[3] Koin's proposed Local Patron Cash-Access Market definition fails for the additional reason that it purports to include only cash-access options provided within a casino and exclude all other "generic" (i.e. non-casino) cash-access options, such as banks, ATMs, and locations offering cash back.  *See* Compl. ¶ 156.  But as "judicial experience and common sense" demonstrate (*Hicks*, 897 F.3d at 1117 (quotation marks omitted)), casino patrons have myriad other ways of obtaining cash to fund gameplay or for any other purpose.  For example, a patron traveling to a casino may obtain cash from any bank or ATM near their home, from an ATM at the airport from which they depart or at which they land, from a grocery store or pharmacy offering cash-back with purchases, etc., thereby obviating the need to obtain cash within the casino.  In other words, generic cash-access systems are substitutes for "in house" cash-access systems because they "have actual or potential ability to deprive each other of significant levels of business."  *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir. 1989).

1  in the market for the tied product," (*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 14

2  (1984), *abrogated on other grounds by Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006)),

3  or will "force buyers into giving up the purchase of substitutes for the tied product" (*United States*

4  *v. Loew's*, 371 U.S. 38, 45 (1962)).

5          Koin attempts to allege that Everi entered into agreements with casinos that tied digital

6  wallets (the tied product) to cash-access services (the tying product).  Koin pleads this claim under

7  the *per se* rule and also alleges a rule of reason tying claim in the alternative.  Under either standard,

8  Koin must plausibly allege: (1) that digital wallets and cash-access services are "separate products"

9  (*Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 995 (9th Cir. 2023)); (2) that Everi required casinos

10 to purchase Everi's digital wallet services in order to purchase other cash-access services

11 (*Brantley*, 675 F.3d at 1199); and (3) that Everi has market power in the tying product market (i.e.,

12 the alleged cash-access markets) (*Ill. Tool Works*, 547 U.S. at 46).  To sustain its *per se* claim,

13 Koin must also allege that "the tying arrangement affects a 'not insubstantial volume of commerce'

14 in the tied product market."  *Epic*, 67 F.4th at 996–97.  Under the rule of reason, Koin must show

15 that the alleged tie "injures competition in the relevant market."  *Robert's Waikiki U-Drive, Inc. v.*

16 *Budget Rent-a-Car Sys., Inc.*, 732 F.2d 1403, 1408 (9th Cir. 1984).

17         Koin does not plausibly allege any of these elements, and thus its *per se* and alternative

18 rule of reason claim should both be dismissed.

19                      **a.     Koin Has Not Alleged Separate Products**

20         "The existence of an unlawful tying arrangement" requires that there be "two separate

21 products involved."  *Hirsh v. Martindale-Hubbell, Inc.*, 674 F.2d 1343, 1346 (9th Cir. 1982).  The

22 two products must be from "distinguishable product markets," as "a tying arrangement cannot

23 exist unless two separate product markets have been linked."  *Jefferson Par.*, 466 U.S. at 21.  Here,

24 as explained above (*supra* Section IV.A), Koin has not plausibly alleged that the markets for cash-

25 access services and digital wallets are distinct.  *See id.*  Accordingly, Koin has not plausibly alleged

26 separate products, which alone requires the dismissal of its tying claims.

27                      **b.     Koin Has Not Plausibly Alleged Coercion**

28         "A tie only exists where the defendant improperly imposes conditions that explicitly or

                                                    11

practically require buyers to take the second product if they want the first one." *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1178 (9th Cir. 2016); *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1159 (9th Cir. 2003) ("Essential to the second element of a tying claim is proof that the seller coerced a buyer to purchase the tied product."); *Joseph v. Amazon.com, Inc.*, 46 F. Supp. 3d 1095, 1103 (W.D. Wash. 2014) ("'Actual coercion by the seller that in fact forces the buyer to purchase the tied product is an indispensable element of a tying violation'") (quoting *Unijax, Inc. v. Champion Int'l, Inc.*, 683 F.2d 678, 685 (2nd Cir. 1982)). A plaintiff must allege, and ultimately prove, "that the defendant went beyond persuasion and coerced or forced its customer to buy the tied product in order to obtain the tying product." *Paladin*, 328 F.3d at 1159.

Here, Koin makes the conclusory assertion that Everi's contracts "impose a tying arrangement to coerce Everi's cash-access casino customers to use only Everi's CashClub Wallet." Compl. ¶ 179. But Koin offers no plausible factual allegations to support this claim.

Koin alleges that Everi uses "standard-form contracts" to tie cash access to digital wallets. Compl. ¶¶ 114, 178–79. It alleges that these contracts include "'Service Schedules' with the specific terms and conditions of use for Everi's various cash-access and related systems" and "appoint[] Everi as the 'sole and exclusive provider of each Service.'" *Id.* ¶ 115. In other words, Koin alleges that Everi's contracts with casinos *may* make Everi the exclusive provider of multiple cash-access products and services, including, potentially, services for a digital wallet. But, for a contract to demonstrate coercion, it must contain an "explicit agreement requiring the purchase [of the tied good] as a condition of the sale." *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1181 (1st Cir. 1994) (quoting *Advanced Comput. Servs., Inc. v. MAI Sys. Corp.*, 845 F. Supp. 356, 368 (E.D. Va. 1994)), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010). Alleging that a contract has the potential to cover two products is not sufficient to establish coercion. *See, e.g.*, *Tic-X-Press, Inc. v. Omni Promotions Co. of Ga.*, 815 F.2d 1407, 1415 (11th Cir. 1987) (to establish coercion "a plaintiff must show something more than just that two products were sold together in the same package"); *Data Gen.*, 36 F.3d at 1180–81. Here, Koin alleges nothing more than that Everi's "standard-form" contract could cover multiple products and that Everi could be appointed the exclusive provider of those products.

These allegations do not establish coercion or a contractual tie.

"In the absence of an explicit tying agreement," a plaintiff must offer "evidence indicating that the supplier has actually coerced the purchase or non-purchase of another product." *Data Gen.*, 36 F.3d at 1180; *see also United States v. Mercedes-Benz of N. Am., Inc.*, 517 F. Supp. 1369, 1381–82 (N.D. Cal. 1981) (where "the contract itself does not demonstrate a formal tying agreement," "[e]vidence of actual practice requiring a tie-in is necessary"); *Ungar v. Dunkin' Donuts of Am., Inc.*, 531 F.2d 1211 (3d Cir. 1976) ("[I]n the absence of a formal agreement, a plaintiff must establish in some other way that a tie-in was involved and not merely the sale of two products by a single seller."); *Cap. Temps., Inc. of Hartford v. Olsten Corp.*, 506 F.2d 658, 661–67 (2d Cir. 1974). Here, Koin has not included any allegations suggesting that Everi conditioned the sale of cash-access services on the purchase of digital-wallet services. Koin does not allege, for example, that Everi ever refused to sell other cash-access services to a casino unless that casino also agreed to purchase digital wallet services. *Cf. Collier v. New York*, 2006 WL 8442757, at *6 (C.D. Cal. Nov. 1, 2006) (holding tying claim was "meritless" where plaintiff did "not allege that Sears refused to sell her the appliances unless she also purchased the warranty plan").

With respect to Everi's contract with Baldini's, Koin pleads only that the contract appointed Everi as the exclusive provider of multiple cash-access products. Compl. ¶ 18. But nowhere does Koin allege that Everi—either expressly in the contract, or elsewhere—*conditioned* Baldini's purchase of cash-access systems on the purchase of digital-wallet services. Nor does Koin allege that Baldini's requested that these products be sold separately when Baldini's entered into its contract with Koin. Indeed, Koin does not even allege (nor could it) that Everi's CashClub wallet *existed* when the contract with Baldini's was negotiated.

In sum, Koin's "alleged arrangement ... lacks the involuntariness or coercion which is essential to the existence of a tie-in" and "d[oes] not allege the existence of a tying arrangement in fact." *Sobrato v. Prudential Ins. Co. of Am.*, 632 F.2d 786, 787 (9th Cir. 1980); *see also Aerotec*, 836 F.3d at 1180 (without evidence of coercion, tying claim "fall[s] off the rails"). Courts dismiss tying claims "in the absence of … evidence that third parties had been coerced" into "purchas[ing] the tied product." *Witt Co. v. RISO, Inc.*, 948 F. Supp. 2d 1227, 1240 (D. Or. 2013) (citing *Famous*

13

*Brands, Inc. v. David Sherman Corp.*, 814 F.2d 517, 523 (8th Cir. 1987)).  This Court should do the same here.

### c. Koin Has Not Plausibly Alleged That Everi Has Market Power In The Cash-Access Markets

"[I]n all cases involving a tying arrangement, the plaintiff must prove that the defendant has market power in the tying product."  *Ill. Tool Works*, 547 U.S. at 46.  "Market power can be proven by either direct or circumstantial evidence."  *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1202 (9th Cir. 1997).

To plead market power directly, a plaintiff must allege "restricted output and supracompetitive prices."  *Rebel Oil, Inc. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995).  "Restrict[ed] output exists only when a defendant can limit marketwide output by reducing its own output."  *Dominick v. Collectors Universe, Inc.*, 2012 WL 6618616, at *4 (C.D. Cal. Dec. 18, 2012).  At minimum, to plausibly allege that Everi charges supracompetitive prices in the cash-access market, Koin needed to allege "non-conclusory facts about [consumers'] ability to find a better deal at other existing [cash-access providers], or about the prices and quality offered by other" cash-access providers.  *Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*, 2022 WL 2791201, at *7 (E.D. Cal. July 15, 2022).  Here, Koin fails to include *any* allegations about the fees charged by other cash-access providers.  Instead, Koin simply asserts that Everi charges "high and unclear fees" (Compl. ¶ 212), but courts have repeatedly explained that allegations of "'artificially high' prices cannot be equated to supracompetitive prices unless a plaintiff provides evidence to the contrary," such as allegations that competitors are unable to charge similarly high prices (*Dominick*, 2012 WL 4513548, at *7; *see also Sidibe v. Sutter Health*, 4 F. Supp. 3d 1160, 1180 (N.D. Cal. 2013) (dismissing complaint because "Plaintiffs' conclusory allegations [that defendant forced consumers to pay more] do not establish direct evidence of market power")).  Koin's attempt to plead market power through direct evidence also falls short for the independent reason that the complaint alleges nothing with respect to any reduced output.  *See Safeway Inc. v. Abbott Lab'ys*, 761 F. Supp. 2d 874, 887 (N.D. Cal. 2011) ("To prove monopoly power directly, supracompetitive pricing must be accompanied by restricted output.").

Nor does Koin allege sufficient facts to plead market power circumstantially.  To do so, a

14

plaintiff must (1) "show that the defendant owns a dominant share" of a plausible relevant market and (2) "show that there are significant barriers to entry and . . . that existing competitors lack the capacity to increase their output in the short run." *Rebel Oil*, 51 F.3d at 1434.  Even if Koin had alleged plausible relevant markets (it has not), it does not plead these elements.

**Dominant Share.**  Courts generally require a minimum of 30–40% market share to establish a prima facie case of market power for tying claims.  *See Jefferson Par.*, 466 U.S. at 27 (holding that 30% market share did not "generate the kind of market power that justifies condemnation of tying").  Here, while Koin alleges that Everi has a "75% to 90%" share of the cash-access markets "according to informed estimates" (Compl. ¶ 208), that allegation fails at the outset because Koin admits it is based on data that is more than a decade old (Compl. ¶ 53 (citing data from 2008 and 2009)).  It is well-established that "current market share is the relevant figure and is normally measured in terms of current output."  *ILC Peripherals Leasing Corp. v. Int'l Bus. Machs. Corp.*, 458 F. Supp. 423 (N.D. Cal. 1978), *aff'd sub nom. Memorex Corp. v. Int'l Bus. Machines*, 636 F.2d 1188 (9th Cir. 1980).

Moreover, even if Koin's "75% to 90%" market share allegations were current, they concern Everi's alleged share of "cash-access *transactions*" in the United States.  This is the wrong metric.[4]  Koin must allege that Everi has market power in the market for providing cash-access *services* to *casinos*.  Critically, Koin does not identify the percentage of *total casinos* in the alleged relevant market that offer Everi's cash-access services.  *See Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 972 (9th Cir. 2008) (holding that allegations related to the defendant's total sales, including that the defendant "ranks first in total gallons of gasoline sold in the United States" were insufficient to plead market power in the market for gasoline franchises, and explaining that proper allegations would relate to "what percentage of gasoline franchises are [the

---

[4] Koin also alleges that Everi reports delivering "more than $40 billion" to casino floors in 2022 "when land-based commercial casino gaming, however funded, generated only about $45 billion in revenue." Compl. ¶ 4.  This is comparing apples to oranges.  The money *delivered* by Everi to patrons may be (but is not necessarily) spent in the casino (on gaming, or on other purchases such as food or entertainment).  But casino *gaming revenue* relates to how much money the casino actually *wins* on casino games.  No plausible inference can be drawn about Everi's cash-access market share—i.e. what percentage of casinos Everi provides cash-access services to in the U.S.—from these figures.

defendant's] as compared to other franchises").

    ***Barriers to Entry.***  To plead market power, Koin must also "allege that there are significant barriers to entry [in the cash-access markets] and that existing competitors lack the capacity to increase their output in the short run." *Witt Co.*, 948 F. Supp. 2d at 1244; *Rebel Oil*, 51 F.3d at 1439. The "hallmark of an entry barrier" is the "disadvantage of new entrants as compared to incumbents." *L.A. Land Co. v. Brunswick Corp.*, 6 F.3d 1422, 1428 (9th Cir. 1993); *W. Parcel Exp. v. United Parcel Serv. of Am., Inc.*, 190 F.3d 974, 975 (9th Cir. 1999) (barriers to entry are "additional long-run costs that were not incurred by incumbent firms but must be incurred by new entrants," or "factors in the market that deter entry while permitting incumbent firms to earn monopoly returns" (quotation marks omitted)).

    Here, Koin does not allege any facts regarding barriers to entry in the market for cash-access services, nor that Everi's competitors lack capacity to increase their output. In fact, the Complaint does not allege a single fact about any of Everi's competitors in the cash-access markets. Because Koin has not pled the existence of any barriers to entry in the relevant tying market or that Everi's competitors lack the ability to increase output, Koin has not pled that Everi has market power in the cash-access markets. *Witt*, 948 F. Supp 2d at 1244 ("there are insufficient allegations establishing barriers to entry and that defendant's conduct precludes competitors from increasing their output …. As a result, the Complaint fails to adequately allege market power").

### d.    Koin Has Not Plausibly Alleged Substantial Foreclosure Or Competitive Harm

    Finally, Koin has not alleged either substantial foreclosure (as required for a *per se* claim) or harm to competition (as required for a rule of reason claim).

    Regarding substantial foreclosure, the relevant question is "whether a total amount of business, substantial enough in terms of dollar-volume so as not to be merely *de minimis*, is foreclosed to competitors by the tie." *Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1089 (9th Cir. 2009) (quotation marks omitted). Here, Koin includes no allegations about the "dollar-volume" of any alleged foreclosure. Instead, Koin pleads only that two casinos were purportedly prevented from obtaining digital-wallet services from Koin and another digital-wallet provider. Compl. ¶¶ 110–12. But nowhere does Koin allege the *amount* of such foreclosure, as required.

16

1   *See, e.g.*, *Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, 2019 WL 633008, at *4 (N.D. Cal.
2   Feb. 14, 2019) (plaintiff failed to plead foreclosure where complaint "does not allege the price of
3   the [product] the above-referenced customer would have purchased").

4       For similar reasons, the complaint does not plausibly allege harm to support Koin's rule of
5   reason claim.  While Koin claims that Everi has "seized [digital wallet] business through its tying
6   arrangement," it does not allege that a *single* casino or patron has adopted Everi's CashClub
7   Wallet.  Compl. ¶ 249.  And the complaint recognizes that there is in fact vibrant competition in
8   the gaming digital wallet market, with "[s]everal companies" having "developed digital wallets in
9   recent years."  Compl. ¶ 10.  At most, Koin has alleged purported harm to *itself*, but that is not
10  sufficient.  "To succeed on a rule of reason claim, an antitrust plaintiff must prove that the restraint
11  in question injures competition in the relevant market"—"injury to the antitrust plaintiff alone is
12  not sufficient to prove injury to competition."  *Robert's Waikiki*, 732 F.2d at 1408.

13      **2.**    **Koin's Exclusive Dealing Claim Should Be Dismissed**

14      Koin also alleges that Everi violated Section 1 by entering into purported "exclusive
15  dealing" arrangements with casinos that require them to use Everi's digital wallet.  Compl. ¶¶ 266,
16  268.  Koin's exclusive dealing claim should also be dismissed because Koin has not alleged
17  substantial foreclosure in that market.

18      An exclusive dealing arrangement "is not, standing alone, a violation of antitrust laws, and
19  in most circumstances does not adversely affect competition in the market."  *Rutman Wine Co*,
20  829 F.2d at 735.  "[E]xclusive contracts are commonplace" (*United States v. Microsoft Corp.*, 253
21  F.3d 34, 70 (D.C. Cir. 2001)), and "[t]here are well-recognized economic benefits to exclusive
22  dealing arrangements, including the enhancement of interbrand competition" (*Allied Orthopedic
23  Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 996 (9th Cir. 2010) (quotation marks
24  omitted)).  Thus, it is well established that an exclusive dealing arrangement does not violate
25  antitrust laws unless "performance of the contract will foreclose competition in a substantial share
26  of the line of commerce affected."  *Tampa Elec.*, 365 U.S. at 327.

27      To start, Koin's claim must be dismissed because the complaint fails to allege basic details
28  about the contracts at issue.  *Aerotec*, 836 F.3d at 1181 (in "analyzing foreclosure," the court must

"look at the actual terms of the agreements").  Koin identifies only two specific contracts with

casinos that it claims contained exclusivity provisions concerning digital wallets.  Compl. ¶¶ 109,

111.  As to any other casino, Koin relies solely on its allegations regarding Everi's purported

"standard-form" contracts.  According to Koin, these contracts (i) specify what services Everi will

provide and (ii) appoint Everi as the exclusive provider of those services.  Compl. ¶¶ 114–15.

Critically, these allegations acknowledge that the specific services Everi will provide *can vary*—

meaning, even if Everi negotiated a "standard-form" contract with any particular casino, it may or

*may not* include digital-wallet services.  This is damning to Koin's theory.  Without any details

about the actual terms of alleged contracts between Everi and other casinos in the alleged market,

no inference can be drawn that the contracts pose even a risk of foreclosure.  *Cf. Aerotec*, 836 F.3d

at 1181 (holding plaintiff could not prove exclusive dealing claim by claiming that "as much as 47

percent [of the relevant market was] under *some form* of contract [with defendant]" as this "figure

convey[ed] no relevant information about the substance of the contracts").

      Beyond this threshold failing, Koin does not allege what proportion of the alleged relevant

market is purportedly foreclosed.  "Courts generally recognize that, at least under section 1 of the

Sherman Act, foreclosure levels are unlikely to be of concern where they are less than 30 or 40 (or

40 to 50) percent of the relevant market."  *Eastman v. Quest Diagnostics Inc.*, 2015 WL 7566805,

at *11 (N.D. Cal. Nov. 25, 2015); *see also Tampa Elec.*, 365 U.S. at 327 (only arrangements whose

"probable" effect is to "foreclose competition in a substantial share of the line of commerce

affected" violate Section 3 of the Clayton Act).  To plausibly plead substantial foreclosure,

"plaintiffs at the very least need[] to plead facts sufficient to support the inference that the exclusive

dealing arrangements have some appreciable impact on the market" by "alleg[ing] how many

[market participants] have in fact entered agreements with [the defendant]" and "alleg[ing] how

the arrangements actually agreed upon have impacted other" market participants.  *Eastman v.

Quest Diagnostics Inc.*, 724 F. App'x 556, 558 (9th Cir. 2018).  "[W]ithout such allegations, there

are no facts that allow the court to evaluate the effect of the exclusive dealing arrangements in the

[relevant] market."  *Id.*

      Here, Koin does not provide any of these basic allegations.  The complaint does not identify

either the total number of casinos in the market or the total number of casinos that Everi has entered

into contracts with.  Instead, Koin relies on conclusory allegations that Everi has entered into

contracts to provide cash-access services to the "vast majority" of casinos in the U.S.  Compl. ¶¶ 2,

54, 185.  But Koin identifies only two casinos that it alleges have been foreclosed as a result of

Everi's contracts, falling far short of the required "substantial" foreclosure.  *Id.* ¶¶ 108–11;

*Eastman v. Quest Diagnostics Inc.*, 2016 WL 1640465, at *8 (N.D. Cal. Apr. 26, 2016) (dismissing

exclusive dealing claim because "[a]bsent additional details regarding [competitors] and [other

potential buyers] that operate in the [relevant] market, plaintiffs' … allegations amount at most to

alleged harm to three particular competitors, not to competition"); *Eisai, Inc. v. Sanofi Aventis

U.S., LLC*, 821 F.3d 394, 404 (3d Cir. 2016) ("identification of a few dozen hospitals out of almost

6,000 in the United States is not enough to demonstrate 'substantial foreclosure'").

Further, while Koin acknowledges the existence of several digital-wallet competitors—

Koin, Everi, IGT (Compl. ¶ 85), Pavilion Payments (*id.* ¶ 112; s*ee also id.* ¶ 85 (discussing other,

unidentified, "wallet[s]"))—Koin provides no allegations about their market shares (including its

own).  To adequately allege foreclosure, Koin must not only plausibly allege that Everi has entered

into contracts with a substantial portion of relevant casinos, but also that those contracts have

"significantly limited" the opportunities for other competitors to "enter into or remain in that

market."  *Tampa Elec.*, 365 U.S. at 328.  Here, Koin alleges no facts that make that inference

possible—to the contrary, its complaint suggests that there are numerous competitors in this

"nascent market."  Compl. ¶ 243.  Without allegations specifying the makeup of the market, who

else competes in it, and the relative shares of those competitors, Koin cannot plausibly allege

substantial foreclosure.  *See Hip Hop Beverage Corp. v. Monster Energy Co.*, 733 F. App'x 380,

381 (9th Cir. 2018) (affirming dismissal of exclusive dealing theory alleging the defendant had

prevented the plaintiff from working with four brokers, because the plaintiff "did not allege how

many total brokers were in the market"); *Eastman*, 724 F. App'x at 559 (affirming dismissal of

exclusive dealing claim where plaintiffs "did not allege the market shares" of competitors).[5]

_____

[5] Relatedly, Koin has failed to allege facts showing that the alleged market for cash-access services
and digital wallets are coextensive, such that contracts for cash-access services would indicate

Instead of pleading the necessary facts regarding foreclosure of the alleged relevant *market*, Koin's allegations focus almost exclusively on Everi's conduct as it relates to *Koin*.  But it is blackletter law that an antitrust plaintiff must plead harm to *competition*, not just a competitor.  *Sightline Payments, LLC v. Glob. Cash Access Holdings, Inc.*, 2010 WL 3156048, at *1 (D. Nev. Aug. 9, 2010) (a plaintiff "must allege more than that the Defendants' wrongful behavior directly damaged its business—it must also allege that the accused behavior stifled competition"); *Eisai, Inc.*, 821 F.3d at 403–04 ("One competitor's inability to compete does not automatically mean competition has been foreclosed.").  "Numerous cases are filed in the federal district courts attempting to make antitrust claims out of what are, at most, contract claims … involving conduct between two parties."  *Reisner v. Gen. Motors Corp.*, 511 F. Supp. 1167, 1178 n.25 (S.D.N.Y. 1981), *aff'd*, 671 F.2d 91 (2d Cir. 1982).  These cases are "regularly dismissed," (*id.*), as "[i]t is not antitrust's purpose to regulate ordinary business contracts" (*Edwards Vacuum, LLC v. Hoffman Instrumentation Supply, Inc.*, 556 F. Supp. 3d 1156, 1175 (D. Or. 2021) (citation omitted) (dismissing antitrust claim where plaintiff had not "alleged pervasive and long-term activity that has had more than a temporary effect on a single competitor")).

In any event, Koin does not even allege that it *was* foreclosed; to the contrary, the complaint reflects that Koin *provides* digital-wallet services to various casinos.  Compl. ¶¶ 18, 93, 143.  This is the opposite of foreclosure.[6]  *Hip Hop Beverage Corp.*, 733 F. App'x at 381 (dismissing exclusive dealing claim where plaintiff "conceded" that it still "remained in the market").

---

foreclosure for digital wallets.  Koin has not alleged that every casino that contracts with Everi for cash-access services is interested in offering a digital wallet.  Where a purchaser is "foreclosed" from buying a product he would not have otherwise bought, even from another seller, "there can be no adverse impact on competition because no portion of the market which would otherwise have been available to other sellers has been foreclosed."  *Jefferson Par.*, 466 U.S. at 16; *see also Blough*, 574 F.3d at 1090–92 (where buyers would not have purchased the allegedly foreclosed product, there was effectively "zero foreclosure" of competitors).  Here, a casino that contracts with Everi for cash-access services but is not ready or willing to adopt a digital wallet is not foreclosed by its agreement with Everi—regardless of the terms of the agreement.

[6] While the complaint alleges that Everi has *taken the position* that Baldini's use of Koin's digital wallet would violate the terms of its agreement with Everi, Koin has argued that Everi's contract with Baldini's in fact *does not* foreclose the casino from using a different digital wallet provider.  *See supra* pp. 5–6.

**C.      Koin's Sherman Act Section 2 Claims Should Be Dismissed**

**1.      Koin's Section 2 Claims Fail For The Same Reasons As Its Section 1 Claims**

Koin alleges that Everi attempted to monopolize, or in the alternative has monopolized, the various alleged digital-wallet markets.  Compl. ¶¶ 272–89.  These claims fall short for the same reasons discussed above.

"[T]o demonstrate attempted monopolization a plaintiff must prove (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power."  *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993).  As a baseline requirement for pleading attempted monopolization, a plaintiff must define "the relevant product and geographic market" and demonstrate the "defendant's economic power in that market."  *Id.* at 459.  Similarly, to plead a monopolization claim, Koin must allege that Everi (1) "has monopoly power in the relevant market," and (2) "willfully acquired or maintained monopoly power in that market."  *Coronavirus Rep.*, 85 F.4th at 954 (quotation marks omitted).  "To meet the first element," Koin must "define the relevant market" and "establish that [Everi] possesses market share in that market sufficient to constitute monopoly power."  *Id.* (quotation marks omitted).

Like its Section 1 claims, Koin's Section 2 monopolization claims depend on the same flawed market definitions discussed in Section IV.A above.  *See Coronavirus Rep.*, 85 F.4th at 956–57 (affirming dismissal of monopolization claim where plaintiff's allegations failed to define a legally valid market).

Koin's Section 2 claims are also predicated on the same defective tying and exclusive dealing theories discussed above.  *See* Section IV.B; Compl. ¶ 278.  Thus, Koin fails to plead the required element of anticompetitive conduct.  *See Williams v. I.B. Fischer Nev.*, 999 F.2d 445, 448 (9th Cir. 1993) (holding that if, in reviewing an alleged Sherman Act violation, a court finds that the conduct in question is not anticompetitive under § 1, the court need not separately analyze the conduct under § 2); *see also Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 543 (9th Cir. 1983), *overruled on other grounds*, *Chroma Lighting v. GTE Prods. Corp.*, 111 F.3d 653, 657 (9th Cir. 1997) (holding that where tying theory alleged under section 1 of the Sherman Act

was dismissed, tying claim could not serve as the "anticompetitive conduct" necessary to proving a section 2 claim).[7]  These defects warrant dismissal of Koin's section 2 claims.  *See, e.g.*, *PNY Techs., Inc. v. SanDisk Corp.*, 2014 WL 1677521, at *8–9 (N.D. Cal. Apr. 25, 2014) (dismissing attempted monopolization claim where plaintiff did not plausibly allege exclusive dealing).

### 2.    Koin's Monopolization Claim Fails For Additional Reasons

Koin's monopolization claim, which it pleads in the alternative to its attempted monopolization claim, should also be dismissed for the independent reason that the proposed market Everi is alleged to have monopolized is nonsensical and legally invalid.  Koin alleges that Everi has monopolized the "Everi-Casino Digital-Wallet Aftermarket"—which, according to Koin, is a single-brand aftermarket comprising casino patrons who are purportedly "locked into" casinos that are under contract with Everi.  Compl. ¶¶ 168–77, 284.  Koin's proposed market does not meet even the most basic requirements courts have set out for finding a single-brand market in antitrust cases, and thus its proposed market —and corresponding claims—fail as a matter of law.

### a.    Requirements For Alleging An Aftermarket

While a relevant market can be an aftermarket restricted to "a single brand of the product at issue" (*Epic*, 67 F.4th at 976 (quotation marks omitted)), "[c]ourts have been extremely reluctant" to recognize single-brand markets (*In re ATM Fee Antitrust Litig.*, 768 F. Supp. 2d 984, 997 (N.D. Cal. 2009) (quotation marks omitted)), "[e]ven where brand loyalty is intense" (*Psystar*, 586 F. Supp. 2d at 1198).  Indeed, "attempts to limit a product market to a single brand" are among the "[c]ases in which dismissal on the pleadings is appropriate [most] frequently." *Todd v. Exxon Corp.*, 275 F.3d 191, 200 (2d Cir. 2001) (Sotomayor, J.).

---

[7] "It is not clear that there are any pleading differences between exclusive dealing under § 1 and § 2 with respect to the degree of market foreclosure." *Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019, 1030 n.8 (N.D. Cal. 2015). "Courts generally recognize that, at least under section 1 of the Sherman Act, foreclosure levels are unlikely to be of concern where they are less than 30 or 40 (or 40 to 50) percent of the relevant market." *Eastman*, 2015 WL 7566805, at *11. However, courts outside the Ninth Circuit have stated that "a monopolist's use of exclusive contracts, in certain circumstances, may give rise to a § 2 violation even though the contracts foreclose less than the roughly 40% or 50% share usually required in order to establish a § 1 violation." *Microsoft*, 253 F.3d at 70. Regardless, any distinction in the required amount of foreclosure is irrelevant where, as here, the Plaintiff has failed to adequately allege any amount of foreclosure. *See, e.g.*, *Eastman*, 724 F. App'x at 558 (affirming dismissal of exclusive dealing theory under section 2 for failure to adequately allege foreclosure).

An aftermarket is a derivative market where consumers' demand for a secondary product is "entirely dependent" on those consumers' earlier purchase of a primary product in a foremarket. *Epic*, 67 F.4th at 976; *see also* P. Areeda & H. Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 564b (4th & 5th eds. 2024) ("[a]n aftermarket is a type of derivative market consisting of consumable goods" that "are typically purchased in a later transaction than the purchase of the underlying primary good, and typically by people who already own the primary good"). A *single-brand* aftermarket is "a derivative aftermarket for products related to or dependent on a specific company's products." *Psystar*, 586 F. Supp. 2d at 1196.

To base an antitrust claim on a single-brand aftermarket, a plaintiff must demonstrate that consumers are "lock[ed]-in" to a specific brand due to their foremarket purchase from the alleged monopolist in such a way "that competition in the foremarket cannot 'discipline [competition in] the aftermarket[].'" *Epic*, 67 F.4th at 976–77 (quoting *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 486 (1992)). To establish lock-in, and overcome the "economic presumption that consumers make a knowing choice to restrict their aftermarket options when they make a foremarket purchase," a plaintiff must satisfy four requirements: "(1) the challenged aftermarket restrictions are 'not generally known' when consumers make their foremarket purchase; (2) 'significant' information costs prevent accurate life-cycle pricing; (3) 'significant' monetary or non-monetary switching costs exist; and (4) general market-definition principles regarding cross-elasticity of demand do not undermine the proposed single-brand market." *Epic*, 67 F.4th at 977, 979 (quotation marks and ellipsis omitted).

### b. Koin's Proposed Aftermarket Definition Fails As A Matter Of Law

Koin's proposed aftermarket definition does not come close to pleading the facts necessary to demonstrate this is one of those "extremely rare" circumstances where a single-brand aftermarket exists. *Psystar*, 586 F. Supp. 2d at 1198.

To start, Koin's proposed aftermarket depends on a foremarket *in which Everi does not compete*. Koin contends that "the relevant foremarket is U.S. land-based casinos," and that the asserted aftermarket "arises by virtue of Everi's exclusive contracts with casinos and casinos' unique relationships with their patrons." Compl. ¶¶ 169, 176. According to Koin, patrons are

1   "locked into" casinos under contract with Everi, and patrons of those casinos are in turn "locked

2   into Everi's cash-access and digital-wallet offerings." *Id.* ¶ 170.  But any single-brand aftermarket

3   here must arise out of *patrons*' purchase of a product *from Everi* in the foremarket—not out of

4   *casinos*' contracts with Everi.   Indeed, the key inquiry in determining whether a relevant

5   aftermarket exists is whether competition among sellers in the foremarket is sufficient to prevent

6   *the defendant that sells in the foremarket* from engaging in anticompetitive conduct in the proposed

7   aftermarket.  *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1050 (9th Cir. 2009); *see also*

8   *Epic*, 67 F.4th at 976–77.  Everi is not aware of any case in the history of the Sherman Act that

9   has allowed an aftermarket claim to proceed where the defendant did not sell in the foremarket.[8]

10      Further, the boundaries of Koin's proposed aftermarket do not align with "actual market

11   realities." *Epic*, 67 F.4th at 978 (quotation marks omitted).  Here, Koin's proposed market is

12   restricted to only those casinos that have contracted with Everi to use its digital wallet exclusively.

13   But just like standard markets, a plausible aftermarket definition must include all reasonable

14   substitute products.  *Id.* at 977 (plaintiff must establish that "general market-definition principles

15   regarding cross-elasticity of demand do not undermine the proposed single-brand market").  And

16   the notion that a market could be restricted to *only* casinos that use Everi's digital wallet is facially

17   absurd; from a consumer demand perspective, other casinos that do not use an Everi wallet are of

18   course "reasonably interchangeable" with those that do.  Indeed, Koin alleges that patrons are not

19   even aware of a casino's digital-wallet offering when selecting which casino to patronize.  Compl.

20

21

22   ───────────────

23   [8] A digital wallet also is not the type of product that typically gives rise to a single-brand
     aftermarket.  A digital wallet is not a "durable good" (*Epic*, 67 F.4th at 976) whose foremarket

24   purchasers must obtain brand-compatible "replacement components" or "repair service" in an
     aftermarket to ensure "proper functioning" of the digital wallet.  P. Areeda & H. Hovenkamp,

25   *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 564b (4th & 5th eds.
     2024); *see also In re ATM Fee Antitrust Litig.*, 768 F. Supp. 2d at 997 ("single brand derivative

26   aftermarket cases have focused on the provision of expensive, durable goods" in the foremarket
     that require consumers to also "purchas[e] compatible parts and service" in the aftermarket).  Nor

27   is a digital wallet a "secondary product" (e.g., Kodak-compatible replacement parts and service),
     the market for which "would not exist without the market for" some "primary product" (e.g.,

28   Kodak photocopier).  *Newcal*, 513 F.3d at 1049 & n.5.

1   ¶ 172.[9]

2          Nor does Koin plausibly allege any of the elements required to establish "lock in."  Koin

3   alleges that patrons of casinos under contract with Everi are "locked into" those casinos because

4   of their "particular ambiance, their staffs' relationship with patrons, and [their] loyalty programs

5   that carefully bond patrons to the casinos."  Compl. ¶ 169.  But these allegations relate to actions

6   by *casinos* or decisions made by *patrons themselves*, not "lock in" effects created by Everi.  Again,

7   Everi is aware of no case that has ever allowed an aftermarket to proceed where purported "lock-

8   in" occurred based on the actions of *third parties* or by the *consumer's voluntary choices*.  To the

9   contrary, courts have been clear that a single-brand aftermarket cannot exist simply because

10  particular patrons are "loyal" to particular casinos.  *Psystar*, 586 F. Supp. 2d at 1198 ("intense"

11  "brand loyalty" not sufficient to establish an aftermarket (quotation marks omitted)).  Koin's

12  allegation "is analogous to a contention that a consumer is 'locked into' Pepsi because she prefers

13  the taste or NBC because she prefers 'Friends,' 'Seinfeld,' and 'E.R.'  A consumer might choose

14  to purchase a certain product because the manufacturer has spent time and energy differentiating"

15  their product from those in the market, "but at base, Pepsi is one of many sodas, … NBC is just

16  another television network," and casinos using Everi digital wallets are just some of the casinos

17  available to patrons.  *Glob. Disc. Travel Servs., LLC v. Trans World Airlines, Inc.*, 960 F. Supp.

18  701, 705 (S.D.N.Y. 1997) (Sotomayor, J.).

19         Koin also fails to allege any "significant" switching costs for patrons.  While Koin contends

20  that "the real costs of Everi's product … are outweighed by the costs of switching to a different

21  casino" (Compl. ¶ 173), it does not allege any facts "about the *magnitude* of switching costs," as

22  required to show that such costs are "'significant'" (*Epic*, 67 F.4th at 979).  And Koin's conclusory

23  allegation defies common sense, as no amount of "loyalty" or "stick[iness]" even raises the

24  *potential* that patrons will face any actual "costs" when simply going to a different casino.  Compl.

25  ¶¶ 169, 174.  In *In re ATM Fee Antitrust Litig.*, for example, the court rejected the plaintiffs'

26

27  _____

    [9] Further, Koin purports to restrict its aftermarket to only some patrons in a given casino—those
28  who use digital wallets to fund gameplay.  Compl. ¶ 168.  This obvious gerrymandering makes for
    an unworkable definition, shifting the boundaries of which patrons are in or out of the market
    based on whatever particular payment preference they have that day.

proposed single-brand aftermarket for ATM transactions routed over a particular bank because the plaintiffs did not "plead a viable theory suggesting that once a customer signs up for a bank account, he is 'locked in' to that bank's services." 768 F. Supp. 2d at 997. As the court explained, "[t]here are numerous banks that offer deposit accounts and ATM services, and customers may presumably switch to a new bank if they are unhappy with the services offered by their current institution." *Id.* The same is true here, as patrons of casinos under contract with Everi may freely visit other casinos if they are unhappy with the original casinos' digital wallet, gaming, food, drink, or any other offerings.

Because Koin has not alleged a plausible relevant aftermarket, its alternative monopolization claim should be dismissed. *See Psystar*, 586 F. Supp. 2d at 1200–04 (dismissing antitrust claim based on an asserted aftermarket definition that "contravene[d] the pertinent legal standards").

**D.   Koin Fails To Allege Antitrust Standing**

Koin's claims should be dismissed for yet another reason—because it has failed to allege antitrust standing, which is a prerequisite for any antitrust claim. *See, e.g.*, *In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 744 (9th Cir. 2012).

"[C]ourts have constructed the concept of antitrust standing, under which they 'evaluate the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them,' to determine whether a plaintiff is a proper party to bring an antitrust claim." *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1054 (9th Cir. 1999) (quoting *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 (1983)). In determining whether a plaintiff has antitrust standing, courts consider: "(1) the nature of the plaintiff's alleged injury; that is, whether it was the type the antitrust laws were intended to forestall; (2) the directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages." *Id.* The first factor is of "tremendous significance," and "that the alleged injury be related to anticompetitive behavior requires, as a corollary, that the injured party be a participant in the same market as the alleged malefactors." *Bhan v. NME Hosps., Inc.*, 772 F.2d 1467, 1470 & n.3 (9th Cir. 1985). "In other words, the party alleging the injury

must be either a consumer of the alleged violator's goods or services or a competitor of the alleged violator in the restrained market." *Eagle v. Star-Kist Foods, Inc.*, 812 F.2d 538, 540 (9th Cir. 1987).

Here, Koin is neither. Of course, Koin is not a casino or patron using digital-wallet services. And Koin has defined the allegedly constrained Digital-Wallet Markets (and aftermarket) in a manner that *excludes* itself. Indeed, Koin alleges that the Koin Wallet is a "general-purpose wallet, as opposed to a gaming-specific wallet" (Compl. ¶ 85), yet defines the Digital-Wallet Markets as comprising "providers of gaming digital wallets—*as distinct from general-purpose digital-wallet providers*" (*id.* ¶ 160 (emphasis added)). Accordingly, Koin has specifically alleged that it, as a provider of a "general-purpose wallet," is not a participant in the allegedly constrained market, and its claims must be dismissed for lack of antitrust standing. *See Eagle*, 812 F.2d at 541 (dismissing antitrust claims for lack of antitrust standing where plaintiffs were not the "requisite [participants] in the relevant market," and thus did not "allege[] the type of injury antitrust laws were intended to forestall"); *Manwin Licensing Int'l S.A.R.L. v. ICM Registry, LLC*, 2013 WL 12123772, at *6 (C.D. Cal. Feb. 26, 2013) ("Because ICM's own description establishes that it is not a direct participant in the market … it has failed to plead that it suffered the type of injury antitrust laws are designed to prevent. Because such an antitrust injury is a necessary component for proof of antitrust standing, the Court need not address the other components of antitrust standing.").

**E.    Koin's State Law Claims Must Also Be Dismissed**

Koin's tying, monopolization, and attempted monopolization claims under the Nevada Unfair Trade Practices Act ("NUPTA") (Compl. ¶¶ 290–308), should be dismissed for all the reasons discussed above. NUPTA contains Nevada's analogue to the Sherman Act (*see Boulware v. Nev. Dep't of Human Res.*, 960 F.2d 793, 800 (9th Cir. 1992)), and provides that its "provisions ... shall be construed in harmony with prevailing judicial interpretations of the federal antitrust statutes" (Nev. Rev. Stat. Ann. § 598A.050). NUPTA thus "appear[s] to require [Nevada] courts to reconcile entirely [Nevada] antitrust law with federal antitrust precedents." *In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 4955377, at *9 (N.D. Cal. Oct. 2, 2014). For

1   this reason, courts have held that an antitrust claim that fails under the Sherman Act also fails

2   under NUPTA.  *E.g.*, *Jensen Enters. Inc.* v. *Oldcastle Precast Inc.*, 2009 WL 440492, at *5 n.7

3   (N.D. Cal. Feb. 23, 2009).

4                              **V.    CONCLUSION**

5           For the reasons set forth herein, Everi respectfully requests that the Court enter an Order

6   dismissing Koin's complaint in its entirety.

8   Dated:  July 8, 2024

10  GIBSON, DUNN & CRUTCHER LLP            DICKINSON WRIGHT PLLC

11  By: */s/ Samuel G. Liversidge*               By: */s/ John P. Desmond*
    Samuel G. Liversidge (*pro hac vice*)        John P. Desmond (SBN 5618)
12  S. Christopher Whittaker (*pro hac vice*)    Michael N. Feder (SBN 7332)
    333 South Grand Avenue                       Gabriel A. Blumberg (SBN 12332)
13  Los Angeles, CA 90071                        100 West Liberty Street, Suite 940
    Telephone:  213-229-7000                     Reno, NV 89501
14  Facsimile:  213-229-7520                     Telephone:  775-343-7500
    sliversidge@gibsondunn.com                   Facsimile:   844-670-6009
15  cwhittaker@gibsondunn.com                    jdesmond@dickinsonwright.com
                                                 mfeder@dickinsonwright.com
16  GIBSON, DUNN & CRUTCHER LLP            gblumberg@dickinsonwright.com
    Rachel S. Brass (*pro hac vice*)
17  One Embarcadero Center, Suite 2600
    San Francisco, CA 94111
18  Telephone:  415-393-8200
    Facsimile:  415-393-8306
19  rbrass@gibsondunn.com

20  *Attorneys for Defendants*
    *EVERI HOLDINGS INC. and*
21  *EVERI PAYMENTS INC.*

**CERTIFICATE OF SERVICE**

I do hereby certify that on the 8th of July 2024, a true and correct copy of Defendants' Motion to Dismiss Plaintiff's Complaint and Memorandum of Points and Authorities in Support Thereof was served via the United States District Court CM/ECF system to counsel of record receiving electronic notification.

DATED:  July 8, 2024

       */s/ Dianne M. Kelling*
      An employee of Dickson Wright PLLC