1  GIBSON, DUNN & CRUTCHER LLP
   SAMUEL G. LIVERSIDGE (*pro hac vice*)
2  S. CHRISTOPHER WHITTAKER (*pro hac vice*)
   333 South Grand Avenue
3  Los Angeles, CA 90071
   Telephone: 213-229-7000
4  Facsimile: 213-229-7520
   sliversidge@gibsondunn.com
5  cwhittaker@gibsondunn.com

6  GIBSON, DUNN & CRUTCHER LLP
   RACHEL S. BRASS (*pro hac vice*)
7  One Embarcadero Center, Suite 2600
   San Francisco, CA 94111
8  Telephone: 415-393-8200
   Facsimile: 415-393-8306
9  rbrass@gibsondunn.com

10

11  *Attorneys for Defendants*

12  *EVERI HOLDINGS INC. and*
    *EVERI PAYMENTS INC.*

13

14

15                    **IN THE UNITED STATES DISTRICT COURT**

16                        **FOR THE DISTRICT OF NEVADA**

17  KOIN MOBILE, LLC, a Nevada limited          CASE NO. 3:24-cv-00178-ART-CSD
    liability company,
18                                              **REPLY IN SUPPORT OF DEFENDANTS'**
                             Plaintiff,          **MOTION TO DISMISS PLAINTIFF'S**
19                                              **COMPLAINT AND MEMORANDUM OF**
          v.                                     **POINTS AND AUTHORITIES IN**
20                                              **SUPPORT THEREOF**

21  EVERI HOLDINGS INC., f/k/a Global Cash
    Access Holdings, Inc., a Delaware            **ORAL ARGUMENT REQUESTED**
22  Corporation, and EVERI PAYMENTS INC.,
    f/k/a Global Cash Access, Inc., a Delaware
23  Corporation,

24                           Defendants.

25

26  / / /

27  / / /

28  / / /

DICKINSON WRIGHT PLLC
JOHN P. DESMOND (SBN 5618)
MICHAEL N. FEDER (SBN 7332)
GABRIEL A. BLUMBERG (SBN 12332)
100 West Liberty Street, Suite 940
Reno, NV 89501
Telephone: 775-343-7500
Facsimile: 844-670-6009
jdesmond@dickinsonwright.com
mfeder@dickinsonwright.com
gblumberg@dickinsonwright.com

## **TABLE OF CONTENTS**

I. INTRODUCTION ....................................................................................................1

II. ARGUMENT ........................................................................................................2

  A.  The Complaint Should Be Dismissed Because Koin Fails to Plead a Relevant Market..2

  B.  Koin Fails to Allege a Tying Arrangement ......................................................5

    1.  Koin Fails to Allege Separate Products in Separate Markets ......................5

    2.  Koin Fails to Allege Coercion...................................................................5

    3.  Koin Fails to Allege Everi Has Market Power In The Cash-Access Markets ..............8

    4.  Koin Fails to Plausibly Allege Substantial Foreclosure or Competitive Harm ..........10

  C.  Koin Fails to Allege an Unlawful Exclusive Dealing Arrangement ..............................10

  D.  Koin's Monopolization Claim Rests on an Implausible Single-Brand Aftermarket .....13

  E.  Koin's Complaint Must Be Dismissed Because It Fails to Allege Antitrust Standing ..15

III. CONCLUSION....................................................................................................15

# **TABLE OF AUTHORITIES**

### **Cases**

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
836 F.3d 1171 (9th Cir. 2016) ....................................................................6, 13

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*,
592 F.3d 991 (9th Cir. 2010) .............................................................................10

*Am. Channel, LLC v. Timer Warner Cable, Inc.*,
2007 WL 142173 (D. Minn. Jan. 17, 2007) ........................................................1

*Apple Inc. v. Allan & Assocs. Ltd.*,
445 F. Supp. 3d 42 (N.D. Cal. 2020) .................................................................3

*Apple, Inc. v. Psystar Corp.*,
586 F. Supp. 2d 1190 (N.D. Cal. 2008) ...................................................3, 4, 15

*Arcell v. Google LLC*,
2024 WL 1090009 (N.D. Cal. Feb. 5, 2024) ......................................................12

*Bayer Schering Pharma AG v. Watson Pharms., Inc.*,
2010 WL 11578470 (D. Nev. Mar. 31, 2010) ....................................................15

*Bhan v. NME Hosps., Inc.*,
772 F.2d 1467 (9th Cir. 1985) ...........................................................................15

*Big Bear Lodging Ass'n v. Snow Summit, Inc.*,
182 F.3d 1096 (9th Cir. 1999) .............................................................................3

*Blough v. Holland Realty, Inc.*,
574 F.3d 1084 (9th Cir. 2009) ...........................................................................10

*Capital Temporaries, Inc. of Hartford v. Olsten Corp.*,
506 F.2d 658 (2d Cir. 1974) ................................................................................6

*Church & Dwight Co. v. Mayer Lab'ys, Inc.*,
868 F. Supp. 2d 876 (N.D. Cal. 2012) .................................................................8

*City of Oakland v. Oakland Raiders*,
20 F.4th 441 (9th Cir. 2021) ..............................................................................15

*Coronavirus Rep. v. Apple, Inc.*,
85 F.4th 948 (9th Cir. 2023) ............................................................................2, 3

*Dial A Car, Inc. v. Transportation, Inc.*,
884 F. Supp. 584 (D.D.C. 1995) ..........................................................................1

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
504 U.S. 451 (1992) ........................................................................13, 14, 15

*Eastman v. Quest Diagnostics Inc.*,
724 F. App'x 556 (9th Cir. 2018) ......................................................................12

*Edwards v. First Am. Corp.*,
    798 F.3d 1172 (9th Cir. 2015) ...................................................................7

*Epic Games, Inc. v. Apple, Inc.*,
    67 F.4th 946 (9th Cir. 2023) ...................................................3, 8, 13, 14

*Fed. Trade Comm'n v. Facebook, Inc.*,
    560 F. Supp. 3d 1 (D.D.C. 2021) ......................................................10, 11

*Foremost Pro Color, Inc. v. Eastman Kodak Co.*,
    703 F.2d 534 (9th Cir. 1983) ....................................................................5

*Frame-Wilson v. Amazon.com, Inc.*,
    591 F. Supp. 3d 975 (W.D. Wash. 2022) ..................................................2

*FTC v. Meta Platforms Inc.*,
    654 F. Supp. 3d 892 (N.D. Cal. 2023) .......................................................5

*FTC v. Warner Commc'ns Inc.*,
    742 F.2d 1156 (9th Cir. 1984) ..................................................................5

*FTC v. Whole Foods Market, Inc.*,
    548 F.3d 1028 (D.C. Cir. 2008) ................................................................5

*Hardy v. City Optical Inc.*,
    39 F.3d 765 (7th Cir. 1994) .....................................................................9

*Hicks v. PGA Tour, Inc.*,
    897 F.3d 1109 (9th Cir. 2018) ...............................................1, 2, 3, 4, 15

*Hirsh v. Martindale-Hubbell, Inc.*,
    674 F.2d 1343 (9th Cir. 1982) ..................................................................5

*ILC Peripherals Leasing Corp. v. Int'l Bus. Machs. Corp.*,
    458 F. Supp. 423 (N.D. Cal. 1978) ...........................................................9

*Ill. Tool Works Inc. v. Independent Link, Inc.*,
    547 U.S. 28, 46 (2006) ..............................................................................8

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
    125 F.3d 1195 (9th Cir. 1997) ..............................................................2, 8

*Industria Siciliana Asfalti v. Exxon Rsch. & Eng'g, Co.*,
    1977 WL 1353 (S.D.N.Y. Jan. 18, 1977) ..................................................6

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,
    466 U.S. 2 (1984) ..................................................................................3, 5

*Klein v. Facebook, Inc.*,
    580 F. Supp. 3d 743 (N.D. Cal. 2022) .......................................................4

*Little Caesar Enterprises, Inc. v. Smith*,
    172 F.R.D. 236 (E.D. Mich. 1997) ............................................................7

*Massaro v. Beyond Meat, Inc.*,
    2021 WL 948805 (S.D. Cal. Mar. 12, 2021) ...........................................15

*Moore v. James H. Matthews & Co.*,
   473 F.2d 328 (9th Cir. 1972) ......................................................................... 9

*Mosley v. Louisville Ladder Inc.*,
   2019 WL 3562109 (D.N.J. Aug. 6, 2019) ..................................................... 6

*Mozart Co. v. Mercedes-Benz of N. Am., Inc.*,
   593 F. Supp. 1506 (N.D. Cal. 1984) ............................................................ 7

*Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*,
   2022 WL 2791201 (E.D. Cal. July 15, 2022) ............................................... 9

*Newcal Indus., Inc. v. Ikon Office Sol'n*,
   513 F.3d 1038 (9th Cir. 2008) ........................................................ 2, 13, 14

*Olin Corp. v. FTC*,
   986 F.2d 1295 (9th Cir. 1993) ..................................................................... 4

*Omega Envtl., Inc. v. Gilbarco, Inc.*,
   127 F.3d 1157 (9th Cir. 1997) ................................................................... 11

*Paladin Assocs., Inc. v. Mont. Power Co.*,
   328 F.3d 1145 (9th Cir. 2003) ............................................................. 6, 7, 8

*Photovest Corp. v. Fotomat Corp.*,
   606 F.2d 704 (7th Cir. 1979) ....................................................................... 5

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
   124 F.3d 430 (3d Cir. 1997) ................................................................ 3, 4, 5

*RealPage, Inc. v. Yardi Sys., Inc.*,
   852 F. Supp. 2d 1215 (C.D. Cal. 2012) ..................................................... 10

*Rebel Oil Co. v. Atl. Richfield Co.*,
   51 F.3d 1421 (9th Cir. 1995) ............................................................... 3, 8, 9

*Rheumatology Diagnostics Lab'y, Inc. v. Aetna, Inc.*,
   2014 WL 524076 (N.D. Cal. Feb. 6, 2014) ............................................... 12

*Rick-Mik Enters., Inc. v. Equilon Enters. LLC*,
   532 F.3d 963 (9th Cir. 2008) ....................................................................... 9

*Rivera v. Invitation Homes, Inc.*,
   2020 WL 8910882 (N.D. Cal. Oct. 29, 2020) .............................................. 6

*Robert's Waikiki U-Drive, Inc. v. Budget Rent-A-Car Sys., Inc.*,
   732 F.2d 1403 (9th Cir. 1984) ................................................................... 10

*RSR Corp. v. FTC*,
   602 F.2d 1317 (9th Cir. 1979) ..................................................................... 4

*Sobrato v. Prudential Ins. Co. of Am.*,
   632 F.2d 786 (9th Cir. 1980) ....................................................................... 8

*T. Harris Young & Assocs., Inc. v. Marquette Elecs., Inc.*,
   931 F.2d 816 (11th Cir. 1991) ..................................................................... 5

*Tampa Elec. Co. v. Nashville Coal Co.*,
  365 U.S. at 320 (1961) ...................................................................................11, 12

*Tanaka v. Univ. of S. Cal.*,
  252 F.3d 1059 (9th Cir. 2001) .....................................................................4

*Tevra Brands LLC v. Bayer HealthCare LLC*,
  2024 WL 1909156 (N.D. Cal. May 1, 2024) ...........................................12

*Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*,
  875 F.2d 1369 (9th Cir. 1989) .....................................................................2

*Ticketmaster Corp. v. Tickets.com Inc.*,
  127 F. App'x 346 (9th Cir. 2005) ...........................................................12

*U.S. v. Aluminum Co. v. Am.*,
  377 U.S. 271 (1964) ......................................................................................5

*U.S. v. Visa U.S.A., Inc.*,
  344 F.3d 229 (9th Cir. 2003) .....................................................................5

*U.S. v. Westinghouse Elec. Corp.*,
  471 F. Supp. 532 (N.D. Cal. 1978) ...........................................................6

*United States v. E.I. duPont de Nemours & Co.*,
  351 U.S. 377 (1956) ......................................................................................4

*In re Webkinz Antitrust Litig.*,
  695 F. Supp. 2d 987 (N.D. Cal. 2010) .....................................................2

*Williams v. I.B. Fischer Nev.*,
  999 F.2d 445 (9th Cir. 1993) .....................................................................15

*Witt Co. v. RISO, Inc.*,
  948 F. Supp. 2d 1227 (D. Or. 2013) ...........................................................6

*ZF Meritor, LLC v. Eaton Corp.*,
  696 F.3d 254 (3d Cir. 2012) .....................................................................12

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.    INTRODUCTION

3    Koin's Opposition, while "replete with the vocabulary of antitrust law" (*Dial A Car, Inc.*

4    *v. Transportation, Inc.*, 884 F. Supp. 584, 590 (D.D.C. 1995)) and various "antitrust buzzwords,"

5    fails to overcome the fact that its Complaint advances fatally deficient claims and contains

6    "conclusory allegations" unsupported by any facts, requiring dismissal.  *Am. Channel, LLC v.*

7    *Timer Warner Cable, Inc.*, 2007 WL 142173, at *12 (D. Minn. Jan. 17, 2007).

8    <u>Relevant Market</u>:  A market must be defined to include products that have the "actual or

9    potential ability to deprive each other of significant levels of business."  *Hicks v. PGA Tour, Inc.*,

10    897 F.3d 1109, 1120 (9th Cir. 2018).  Koin alleges that digital wallets will eventually deprive cash-

11    access systems of *all* business.  Koin's proposed market definitions, which put wallets and cash-

12    access in separate markets, are thus fatally deficient.  And none of Koin's arguments about "cross-

13    elasticity" and "practical indicia" (Opp. at 9–10) remedy that dispositive flaw.

14    <u>Tying</u>:  Koin fails to allege any facts showing that casinos—as a condition of contracting

15    with Everi for cash-access services—are *required* to use only Everi's wallet.  Koin fails even to

16    cite the contractual language it says constitutes an express tie, and it fails to allege casinos were

17    *forced* to accept the language at the risk of not being able to receive cash-access services.

18    <u>Exclusive Dealing</u>:  Koin does nothing to address its failure to allege substantial

19    foreclosure, as required.  Koin identifies only two casinos in the entire country that were

20    supposedly foreclosed, and it otherwise fails to allege any nonconclusory facts concerning any

21    competitors' market shares and how they were affected by the alleged exclusive dealing contracts.

22    <u>Aftermarket</u>:  Koin rests its monopolization claims on a single-brand aftermarket that

23    defies Supreme Court and Ninth Circuit precedent, under which a single-brand aftermarket may

24    exist only if consumers purchase a durable good from the alleged monopolist in the asserted

25    foremarket.  But here, Everi does not participate in the alleged foremarket (for casinos), and thus

26    casino patrons do not purchase anything (much less a durable good) from Everi in that foremarket.

27    <u>Antitrust standing</u>:  Koin's entire Complaint should be dismissed because Koin pleaded

28    itself out of the allegedly harmed market, and thus Koin has failed to allege it has antitrust standing.

1

## II.    ARGUMENT

2

**A.    The Complaint Should Be Dismissed Because Koin Fails to Plead a Relevant Market**

3

"Failing to define a relevant market alone is fatal to an antitrust claim." *Coronavirus Rep.*

4

*v. Apple, Inc.*, 85 F.4th 948, 957 (9th Cir. 2023).  A market "must encompass the product at issue

5

as well as all economic substitutes for the product." *Hicks*, 897 F.3d at 1120.  "Including economic

6

substitutes ensures that the relevant product market encompasses the group or groups of sellers or

7

producers who have actual or potential ability to deprive each other of significant levels of

8

business." *Id.* at 1120.  Koin tries to downplay that requirement, but a "market must include the

9

group or groups of sellers or producers who have actual or potential ability to deprive each other

10

of significant levels of business." *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1045

11

(9th Cir. 2008); *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1203 (9th Cir.

12

1997); *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir. 1989).[1]

13

Koin concedes digital wallets have the actual and potential ability to deprive cash-access

14

services of significant levels of business.  Koin alleges that some customers have already switched

15

from cash-access to wallets; after all, before digital wallets were approved for gaming use in 2020

16

(Compl. ¶ 77) and adopted, every casino and patron would have been a cash-access customer.

17

Further, Koin alleges that "the burgeoning market for digital wallets poses an *existential threat* to

18

the value of Everi's [purported] dominance over gaming cash access," since "*more* casinos and

19

patrons using digital wallets means *fewer* casinos and patrons using Everi's cash-access systems."

20

*Id.* ¶ 57 (emphases added); *see also id.* ¶ 98.  The "threat is real," Koin says, because casinos have

21

become "interested in ways of reducing cash usage" as patrons have become "less likely to use

22

cash," and thus "digital wallets" represent a "viable alternative." *Id.* ¶¶ 58, 60–62.  And "[l]ike

23

emails replaced most letters, digital wallets are poised to *replace nearly all* cash-based elements

24

of casino play" (*id.* ¶ 76 (emphasis added)), as "the rising digital-wallet markets threaten to relegate

25

cash-access kiosks to history's trash heap of payphones and typewriters." *Id.* ¶ 129.

26

These allegations are fatal to Koin's claims.  Koin argues that market definition is "a fact

27

28

---

[1]  Koin's cases recognize the same. *E.g.*, *Frame-Wilson v. Amazon.com, Inc.*, 591 F. Supp. 3d 975,
989 (W.D. Wash. 2022); *In re Webkinz Antitrust Litig.*, 695 F. Supp. 2d 987, 994 (N.D. Cal. 2010).

question." Opp. at 8. But there is no "prohibition against dismissal … for failure to plead a relevant market" (*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997)), and dismissal at the pleading stage is warranted where, as here, "the complaint's 'relevant market' definition is facially unsustainable," including because it "omit[s] … economic substitutes." *Hicks*, 897 F.3d at 1120–21; *e.g.*, *Coronavirus Reporter*, 85 F.4th at 957; *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1105 (9th Cir. 1999); Mot. at 10.[2]

Koin presents five additional arguments in support of its market definition, but each fails.

*First*, Koin suggests a "distinct demand" sufficient to show the existence of distinct products is necessarily sufficient to show the existence of "different markets." Opp. at 8. That is wrong. A relevant market generally *should* include more than one product. *E.g.*, *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1435 (9th Cir. 1995). And "defining a market on the basis of demand considerations alone is erroneous." *Id.* at 1436. Koin's argument also incorrectly collapses the tests used to analyze the existence of separate products with the test for markets. *Compare Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 995 (9th Cir. 2023) ("separate products"), *with Hicks*, 897 F.3d at 1120–21 ("relevant market"). It also rests on a misreading of *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 21–22 (1984), as there was no suggestion there that anesthesiological services were going to replace nearly all hospital services.

*Second*, Koin says "a habitual cash-carrying casino patron will not switch to a digital-wallet app based on a small shift in cash-access pricing, nor will a tech-savvy digital-wallet user swap out their phone-based app for cash if digital-wallet fees inch up." Opp. at 2; *see id.* at 9. That "is a legal conclusion veiled as a factual allegation that [courts] do not consider," as Koin "merely restate[s] a test for market definition without any factual elaboration." *Hicks*, 897 F.3d at 1122; *Apple, Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1198 (N.D. Cal. 2008). And whether a monopolist "could profitably impose a small but significant and nontransitory price increase" (*Hicks*, 897 F.3d at 1122–23) is not a substitute for "the threshold question" of whether two products can deprive each other of business. *Rebel Oil*, 51 F.3d at 1436–37. Here, Koin has

---

[2] Koin also argues cash-access and digital wallets "occupy distinct antitrust submarkets." Opp. at 12 n.5. But Koin's Complaint does not allege any submarkets, and it cannot add such allegations via a brief. *See Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 59 (N.D. Cal. 2020).

alleged that cash-access users have switched and will continue to do so in droves—otherwise, digital wallets could not "replace nearly all" cash-access systems.  Compl. ¶ 76.  Even if some subset of patrons prefer one over the other such that they'd never switch, "personal preferences" are "irrelevant."  *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063, 1065 (9th Cir. 2001).

*Third*, Koin argues "the pricing structure" between cash-access services and digital wallets "is entirely different."  Opp. at 9.  But "mere price differential" does "not necessarily signal a distinct market."  *Psystar*, 586 F. Supp. 2d at 1198–99.  In *United States v. E.I. duPont de Nemours & Co.*, 351 U.S. 377, 401 (1956), "cellophane was in the same market as other flexible packaging materials despite costing two or three times more, because the products were reasonably interchangeable despite the price difference."  *Psystar*, 586 F. Supp. 2d at 1199.  So too here.

*Fourth*, Koin argues the "overall functionality" differs between cash-access systems and digital wallets.  Opp. at 11–12.  But "products need not be fungible to be considered in the same market."  *Olin Corp. v. FTC*, 986 F.2d 1295, 1299 (9th Cir. 1993).  It is sufficient if "one product is roughly equivalent to another for the use to which it is put."  *Queen City*, 124 F.3d at 437.  That is why *Hicks* held one "advertising format" with "increased effectiveness" was not "in a distinct market" from formats also capable of "reach[ing] [relevant] consumers."  897 F.3d at 1122.  And that's why in *Tanaka* the relevant market should have included women's college soccer programs "throughout the country," even though the quality of programs varies.  252 F.3d at 1063–64.

*Fifth*, relying on the so-called *Brown Shoe* indicia, Koin argues that digital wallets use "new" and "separately regulated" technology.  Opp. at 9–10.  But the *Brown Shoe* indicia are not "conclusive evidence" that two products belong in distinct markets.  *RSR Corp. v. FTC*, 602 F.2d 1317, 1321 (9th Cir. 1979).  A plaintiff must still explain why products with different characteristics "are not reasonably interchangeable by consumers for the same purposes."  *Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 766 (N.D. Cal. 2022).  Koin provides no such explanation.  For instance, it fails to explain why consumers seeking to fund gameplay care whether cash-access systems and digital wallets use "different hardware and technology."  Opp. at 10.  If anything, Koin alleges they do *not* care and that, regardless of the technology, cash-access systems and digital wallets are "viable alternative[s]" to each other.  Compl. ¶¶ 61–62.

4

Analogizing to "the automobile" and "horse drawn wagon[s]," Koin argues "innovative" products need not be in the same market as obsolete ones. Opp. at 13. But that reasoning applies only if it's not "feasible" to buy the old product. *Queen City*, 124 F.3d at 437. It does *not* apply where, as here, Koin admits cash and cash-access services are still in heavy use. Compl. ¶ 156.[3]

## B.  Koin Fails to Allege a Tying Arrangement

To plead tying, Koin must allege that (1) digital wallets and cash-access services are "separate products"; (2) Everi required casinos to purchase Everi's digital wallet services in order to purchase other cash-access services; and (3) Everi has market power in the tying product market. Mot. at 11. To sustain its *per se* claim, Koin must allege "the tying arrangement affects a 'not insubstantial volume of commerce' in the tied product market." *Id.* Under the rule of reason, Koin must show the alleged tie "injures competition in the relevant market." *Id.* Koin fails to do so.

### 1.  Koin Fails to Allege Separate Products in Separate Markets

Koin's failure to allege "two separate products" (*Hirsh v. Martindale-Hubbell, Inc.*, 674 F.2d 1343, 1346 (9th Cir. 1982)) from "distinguishable product *markets*" (*Jefferson Par.*, 466 U.S. at 21 (emphasis added)) alone warrants dismissal of its tying claims. *Supra* Part II.A.

### 2.  Koin Fails to Allege Coercion

"A significant element" of a tying claim is "coercion": "the seller must condition the sale of the tying product on the buyer's purchase of the tied product." *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 540 (9th Cir. 1983). "[F]or a tie to exist a seller must withhold product A unless the buyer also selects product B." *T. Harris Young & Assocs., Inc. v. Marquette Elecs.*, Inc., 931 F.2d 816, 822 (11th Cir. 1991). A plaintiff must allege "the defendant went

---

[3]  None of the cases Koin cites supports its proposed market definitions. For instance, some cases it cites are distinguishable because they concerned findings at the preliminary injunction stage (*e.g.*, *U.S. v. Aluminum Co. v. Am.*, 377 U.S. 271, 276 (1964); *FTC v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1163 (9th Cir. 1984); *FTC v. Meta Platforms Inc.*, 654 F. Supp. 3d 892, 911–20 (N.D. Cal. 2023)) or after a bench trial (*e.g.*, *U.S. v. Visa U.S.A., Inc.*, 344 F.3d 229, 239 (9th Cir. 2003); *Photovest Corp. v. Fotomat Corp.*, 606 F.2d 704, 713 (7th Cir. 1979)), and at least one is an out-of-circuit concurring opinion (*FTC v. Whole Foods Market, Inc.*, 548 F.3d 1028, 1048 (D.C. Cir. 2008) (Tatel, J., concurring)). But all the cases Koin cites are inapposite because none involved a plaintiff like Koin who affirmatively asserted that the plaintiff's product posed an existential threat to and was going to "replace nearly all" of the defendant's product, or that the plaintiff's product threatened to relegate the defendant's product "to history's trash heap." Compl. ¶¶ 61–62, 76, 129.

1    beyond persuasion and coerced or forced its customer to buy the tied product in order to obtain the

2    tying product." *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1159 (9th Cir. 2003).

3        Koin fails to allege coercion for either its positive or (unpled) negative tying theory. *See

4    Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1178 (9th Cir. 2016) (both theories share

5    the "common element … that a seller explicitly or implicitly imposes conditions linking the sale

6    of a tying product with the sale of the tied product").[4]  Koin alleges that casinos were "forced" to

7    accept the alleged tying agreements (Compl. ¶¶ 17, 142, 215), but it alleges no *facts* in support of

8    that legal conclusion. *See Industria Siciliana Asfalti v. Exxon Rsch. & Eng'g, Co.*, 1977 WL 1353,

9    at *9 (S.D.N.Y. Jan. 18, 1977) ("[a]lthough the complaint does utter such catchwords and phrases

10   as 'coerce' … such incantations do not constitute a pleading of actual coercion").  Koin does not

11   allege any casino agreed to the supposed "tying language" *because* it had to as a condition of

12   obtaining cash-access services. *See Witt Co. v. RISO, Inc.*, 948 F. Supp. 2d 1227, 1241 (D. Or.

13   2013) (no allegations dealers "agreed to the tying arrangement under threat of termination").

14       Koin argues it need not plead coercion because "tying language" exists in Everi's purported

15   "form contracts." Opp. at 18–19.  But Koin does not provide (much less allege) the actual language

16   of *any* "express agreement" it says constitutes "tying language." *Id.* at 18–19.  And Koin's

17   conclusory assertion that the unpled contract language constitutes an "express agreement" or that

18   the agreements at issue are "form contracts" is insufficient as a matter of law. *Cf. Mosley v.

19   Louisville Ladder Inc.*, 2019 WL 3562109, at *2 (D.N.J. Aug. 6, 2019); *Rivera v. Invitation Homes,

20   Inc.*, 2020 WL 8910882, at *10 (N.D. Cal. Oct. 29, 2020).

21       Koin also is wrong on the law, as courts require an additional showing of coercion even

22   when there is purported "tying language" in an agreement.  As courts have held, "dismissal of [a]

23   tying complaint is [warranted in] the absence of any evidence that [a party] was coerced into

24   including unwanted products in its agreement." *U.S. v. Westinghouse Elec. Corp.*, 471 F. Supp.

25   532, 544–45 (N.D. Cal. 1978), *aff'd*, 648 F.2d 642 (9th Cir. 1981).

26       In *Capital Temporaries, Inc. of Hartford v. Olsten Corp.*, 506 F.2d 658, 660 (2d Cir. 1974),

27

28   ---
     [4] Koin accuses Everi of "fail[ing] to grapple with the concept of negative tying" (Opp. at 17), but
     Koin did not allege a negative tying theory in its Complaint.  Rather, Koin alleged only a *positive*
     tie theory.  *Compare* Compl. ¶¶ 246, 256, *with Aerotec*, 836 F.3d at 1178 (defining positive tie).

for example, the plaintiff entered into a franchise agreement with the defendant, which was a franchisor of businesses that supplied temporary "white collar" or "blue collar" workers to companies. The plaintiff interpreted the franchise agreement to require that he open both a "white collar" and "blue collar" operation, but a dispute arose when he later claimed that he did not want to open a "blue collar" operation. *Id.* at 665–66. The Second Circuit held that the contract alone was insufficient to show coercion. "[A] franchise agreement, like any contract of sale, may obligate the purchaser to accept numerous commodities … [but] this does not mean that the purchaser was coerced in any fashion to take some or all to get one or some." *Id.* at 666. The "fatal flaw" in the plaintiff's case was there was "no proof or evidence to suggest that he objected to the package, that he was only interested in a white collar operation, [or] that the blue collar operation was forced upon him." *Id.* Any such allegations are also absent from Koin's complaint.

Koin's repeated references to Everi's allegations in the state court action do not remedy this deficiency. Koin cites Everi's allegation that its contracts with casinos make it the exclusive provider of both cash-access and quasi cash-access products. *E.g.*, Opp. at 17. But again, the fact that customers agreed that Everi would be the exclusive provider of multiple products does not show that Everi "went beyond persuasion and coerced or forced its customer to buy [quasi cash-access products] in order to obtain [cash-access products]." *Paladin*, 328 F.3d at 1159.

The cases Koin cites are not to the contrary. In *Mozart Co. v. Mercedes-Benz of N. Am., Inc.*, 593 F. Supp. 1506, 1513 (N.D. Cal. 1984), the court explained that regardless of the existence of express tying language in the agreement, "coercion is a necessary element of an illegal tying arrangement." And while the court ultimately found coercion, it did so based not only on the language of the agreement, but also based on the fact that the language had been "accept[ed] by a large number of dealers who … stated they believe[d] they had no choice." *Id.* And in *Little Caesar Enterprises, Inc. v. Smith*, 172 F.R.D. 236, 250 n.9 (E.D. Mich. 1997), the court was ruling on a motion for class certification, not the merits, and found merely that coercion there could be determined "on a class-wide basis." A ruling on class certification of course does not involve ruling on the merits. *See Edwards v. First Am. Corp.*, 798 F.3d 1172, 1178 (9th Cir. 2015).

Koin also points to Everi's attempt to enforce its contract rights. Opp. at 19; Compl.

¶¶ 108, 109, 111, 112, 113.  But these allegations do not show coercion.  There are no allegations that Everi threatened to withhold cash-access services from casinos if they contracted with another digital wallet provider.  Indeed, there are no allegations at all that Everi "coerced or forced its customer[s] to buy the tied product in order to obtain the tying product" (*Paladin*, 328 F.3d at 1159), and thus "the involuntariness or coercion which is essential to the existence of a tie-in" is missing.  *Sobrato v. Prudential Ins. Co. of Am.*, 632 F.2d 786, 787 (9th Cir. 1980).

### 3.    Koin Fails to Allege Everi Has Market Power In The Cash-Access Markets

A plaintiff must allege "that the defendant has market power in the tying product" (i.e., cash-access systems).  *Ill. Tool Works Inc. v. Independent Link, Inc.*, 547 U.S. 28, 46 (2006).  "Market power can be proven by either direct or circumstantial evidence." *Image Tech.*, 125 F.3d at 1202.  Koin alleges neither.

***Direct evidence.***  To plead market power directly, a plaintiff must allege "restricted output and supracompetitive prices."  *Rebel Oil*, 51 F.3d at 1434.  Koin has alleged neither.  Koin claims that it has alleged restricted output because "the nub of this case is Everi's ability to restrict output through indefinite exclusive-use agreements for *digital wallets*."  Opp. at 16 (emphasis added).  But Koin must allege reduced output in the alleged market for *cash-access services*—the "tying product," where the market power must exist—not digital wallets.  *Ill. Tool Works*, 547 U.S. at 46.  Koin does not allege that Everi restricts its own output for cash-access, or that by doing so Everi "can restrict marketwide output and, hence, increase marketwide prices."  *Rebel Oil*, 51 F.3d at 1434; *Church & Dwight Co. v. Mayer Lab'ys, Inc.*, 868 F. Supp. 2d 876, 896 (N.D. Cal. 2012).

Koin is similarly misguided in its argument that allegedly high profit margins obviates the need to show restricted output.  *Epic* did not require proof of reduced output because the plaintiff had proven supracompetitive pricing (67 F.4th 946 at 972, 984–85); Koin fails to do that here because it alleges no "facts about [consumers'] ability to find a better deal at other existing [cash-access providers]."  Mot. at 14.  Koin also does not cite a single factual allegation supporting its conclusory argument that Everi "provid[es] a substandard cash-access product."  Opp. at 16.[5]

---

[5]  Koin cites allegations of two complaints about issues with cash withdrawals.  Compl. ¶ 212.  But the Complaint does not allege that these infrequent errors would not happen in an allegedly

***Circumstantial evidence.*** To plead market power circumstantially, a plaintiff must allege (1) "that the defendant owns a dominant share" of a plausible relevant market, and (2) "that there are significant barriers to entry and … that existing competitors lack the capacity to increase their output in the short run." *Rebel Oil*, 51 F.3d at 1434. Koin fails to allege that Everi has a "dominant share" of the cash-access markets, or to respond to Everi's arguments concerning the flaws in its market power allegations. For instance, Koin's reliance on decades-old data says nothing about Everi's "current … share" of the alleged market. *ILC Peripherals Leasing Corp. v. Int'l Bus. Machs. Corp.*, 458 F. Supp. 423 (N.D. Cal. 1978).[6] And its allegation that Everi controls 75% of cash access *transactions* says nothing about the percentage of total casinos in the alleged relevant market that offer Everi's cash-access services. Mot. at 15. Koin does not cite a single case to the contrary, and its attempt to distinguish *Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963 (9th Cir. 2008), fails. There, the court discounted the allegation that the defendant "ranks number one in the industry in branded gasoline *stations*" because that allegation had nothing to do with the defendant's position in the alleged market for "gasoline *franchises*." *Id.* at 972. The disconnect between the allegation of the share of "branded gasoline stations" and alleged market for "gasoline franchises" is like the disconnect here between allegations of Everi's share of "cash-access *transactions*" and the alleged "*casino* cash-access market." None of the other cases Koin cites bolsters its position, as in those cases, competition occurred at the micro, transaction level; but here, competition occurs at the macro, casino level. *See Moore v. James H. Matthews & Co.*, 473 F.2d 328, 332 (9th Cir. 1972); *Hardy v. City Optical Inc.*, 39 F.3d 765, 767 (7th Cir. 1994).

Nor do Everi's supposed "proclamations of predominance" suffice to plead market power. Opp. at 14–15. Courts hold that a defendant's "own promotional materials touting itself as the

---

competitive market, nor that such errors do not occur with Everi's competitors. *See Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*, 2022 WL 2791201, at \*7 (E.D. Cal. July 15, 2022).

[6] Koin tries to disregard its own allegations about the data dating back to 2008 and 2009, and now claims the "75-90% market share … arose when Everi processed $22 billion of such transactions in a casino-gaming market with net revenues of about $32 billion." Opp. at 14–15 n.8. But that comparison is apples to oranges—not all money retrieved from casino cash-access services is necessarily spent on the casino floor, and conversely, not all money spent on the casino floor comes from casino cash-access services. Mot. at 15 n.4. This same failure plagues Koin's market allegations, and the math does not add up: $22 billion of $32 billion is only 68%.

1    industry-lead[er] … are insufficient alone to establish a plausible assertion of market power."

2    *RealPage, Inc. v. Yardi Sys., Inc.*, 852 F. Supp. 2d 1215, 1226 (C.D. Cal. 2012).[7]

3        **4.    Koin Fails to Plausibly Allege Substantial Foreclosure or Competitive Harm**

4        Koin also has not alleged substantial foreclosure (for its per se claim) or harm to

5    competition (for its rule of reason claim).  Koin argues that it has alleged "a total amount of

6    business, substantial enough in terms of dollar-volume so as not to be merely de minimis, is

7    foreclosed to competitors by the tie" (*Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1089 (9th

8    Cir. 2009)), based on its allegations of "tens of millions of dollars of lost profits" (Opp. at 20).  But

9    these vague and conclusory allegations do not demonstrate the "dollar-volume" of the alleged

10    foreclosure.  Koin does not plead the value of the contract that it could have obtained, absent

11    Everi's alleged conduct, even though it surely has this information on hand.

12        Koin also fails to allege that the alleged tying arrangement injured *competition*.  Koin

13    merely repeats its allegations that fail to demonstrate market power, claiming that these allegations

14    show harm to competition.  But Koin's conclusory allegations of harm to *itself* are insufficient to

15    make the requisite showing: "To succeed on a rule of reason claim, an antitrust plaintiff must prove

16    that the restraint in question injures competition in the relevant market"—"injury to the antitrust

17    plaintiff alone is not sufficient to prove injury to competition."  *Robert's Waikiki U-Drive, Inc. v.

18    Budget Rent-A-Car Sys., Inc.*, 732 F.2d 1403, 1408 (9th Cir. 1984).

19    **C.    Koin Fails to Allege an Unlawful Exclusive Dealing Arrangement**

20        The mere existence of an exclusive dealing contract does not constitute a violation of

21    antitrust law.  *See Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991,

22    995 (9th Cir. 2010).  Because there are "well-recognized economic benefits to exclusive dealing

23    arrangements," Koin must plausibly allege that an exclusive dealing arrangement "foreclose[s]

24    competition in a substantial share of the line of commerce affected."  *Id.*  Koin fails to do so.

25        An exclusive dealing plaintiff must plausibly allege that the challenged arrangements have

26

27    ⁷ Koin's attempt to pivot to allegations of "casino-share" also fails.  All Koin alleges is that "Everi

28    has contracted with an overwhelming majority of casino operators."  This conclusory allegation is
     insufficient.  *Fed. Trade Comm'n v. Facebook, Inc.*, 560 F. Supp. 3d 1, 18 (D.D.C. 2021)
     (collecting cases dismissing imprecisely alleged "majority" or "dominant" market shares).

foreclosed at least 30 to 40% of the relevant market.  *See* Mot. at 18; Opp. at 22.  In measuring foreclosure, "it is necessary to weigh the probable effect of the contract on the relevant area of effective competition."  *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. at320, 329 (1961). Specifically, courts assess the "selling opportunities reasonably open to rivals," focusing on the "sales they may readily compete for."  *Omega Envtl., Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1163 (9th Cir. 1997).  Here, Koin alleges that Everi's exclusive dealing has foreclosed competition in the "U.S. Casino Digital-Wallet Market" in which "providers of gaming digital wallets … compete … to contract with casinos in the United States to provide digital wallets."  Compl. ¶ 160.  Thus, the "selling opportunities" relevant to foreclosure are opportunities to contract with casinos that want a digital wallet.  Mot. at 19 n.5.  But the Complaint identifies only two casinos that have allegedly been foreclosed regarding digital wallets.  Mot. at 19.  And while Koin alleges that Everi has entered into exclusive dealing agreements "across the country" (Opp. at 22 ), such allegations are "too conclusory."  *Facebook*, 560 F. Supp. 3d at 18.

Despite its failure to allege *any* facts about competition in the digital wallet market, Koin contends that it has "more than met" the substantial foreclosure standard because it has alleged that (1) Everi has "near-monopoly" power in the cash-access markets and (2) any Everi cash-access contract also covers digital-wallet services, thus giving Everi "near-monopoly" power in the digital-wallet market as well.  Opp. at 21–22.  But Koin's attempt to reverse engineer substantial foreclosure in the digital wallet market by relying on its (inadequate) allegations of market power in the cash-access markets (*see supra* Part II.B.3) crumbles under scrutiny.

As explained above (*supra* Part II.B.3), Koin's allegation that Everi controls "75% to 90%" of "cash-access transactions" does not indicate how many casinos Everi has contracted with for *cash-access* services, let alone how many of these casinos have exclusive dealing contracts that cover digital wallets.[8]  Because Koin fails to plead any details regarding the number of casinos

---

[8]  Koin argues that it has "alleged that all of Everi's competitors together control less than 30% of the relevant market."  Opp. at 22 n.15.  But none of the cited paragraphs in the Complaint says that.  They simply re-allege Koin's assertion that Everi controls "75% to 90%" of cash-access transactions, which says nothing about Everi's share of the digital wallet market—or the shares of the market occupied by any of the digital wallet providers identified in the Complaint.

that Everi has contracted with, use Everi's digital wallet, or use *other* digital wallets,[9] it has "not allege[d] a sufficient factual basis from which it is possible to infer that any particular portion of the [digital wallet] market was foreclosed as a result of exclusive dealing between [Everi] and [casinos]." *Eastman v. Quest Diagnostics Inc.*, 724 F. App'x 556, 559 (9th Cir. 2018); *see also Arcell v. Google LLC*, 2024 WL 1090009, at *4 (N.D. Cal. Feb. 5, 2024) (dismissing where plaintiffs' allegations amounted to a "conclusory assertion" of foreclosure in the relevant market); *Rheumatology Diagnostics Lab'y, Inc. v. Aetna, Inc.*, 2014 WL 524076, at *10 (N.D. Cal. Feb. 6, 2014) (plaintiffs did not allege "how the agreement affected ... any ... market participant's share").

Koin's allegations regarding the terms of the "standard contract" also fail. Koin alleges that the provisions of Everi's contracts (1) providing Everi's right of first refusal and (2) the five-year term impose "onerous and byzantine limitations" on competition. Opp. at 23. But a right of first refusal does not restrict competition—it gives Everi the chance meet competition by *matching* an offer from another vendor. As to the five-year contract term, "courts in this circuit have found three-year and sometimes even five-year contracts to be short-term," substantially "negat[ing] their potential to foreclose competition." *Tevra Brands LLC v. Bayer HealthCare LLC*, 2024 WL 1909156, at *7 (N.D. Cal. May 1, 2024) (collecting cases); *Ticketmaster Corp. v. Tickets.com Inc.*, 127 F. App'x 346, 348 (9th Cir. 2005) (six-year exclusive contract "not unreasonabl[e]").

Koin cites *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254 (3d Cir. 2012), but that case supports Everi because it illustrates the deficiencies in Koin's Complaint. There, the Third Circuit explained that "[e]xclusive dealing will generally only be unlawful where the market is highly concentrated, the defendant possesses significant market power, and there is some element of coercion present." *Id.* at 284. The court held that the case was the "rare" one "in which exclusive dealing would pose a threat to competition," because the supplier had entered into exclusive dealing agreements with all four direct purchasers in the market, no purchaser could "afford to lose" the supplier's business since it had been the only supplier for 20 years until the plaintiff

---

[9] Koin misses the point when it contends that it is "not required to identify every alleged competitor in its pleadings." Opp. at 22 n.15. Adequately pleading substantial foreclosure requires alleging facts addressing "the relative strength of the parties" and "the proportionate volume of commerce involved in relation to the total volume of commerce in the relevant market area," both of which require a holistic view of the relevant market. *Tampa Elec.*, 365 U.S. at 329.

1   entered the market (*id.* at 282–87), and "the conditional discounts and unilateral cancellation

2   provision effectively coerced buyers to enter into contracts with onerous terms." *Aerotec*, 836

3   F.3d at 1182–83 (discussing *ZF Meritor*).  Here, by contrast, Koin does not—and cannot—allege

4   that Everi fully occupies the market such that casinos could not afford to lose Everi's business, nor

5   has it alleged that casinos were coerced to enter into contracts with Everi.  *See supra* Part II.B.2.

6   **D.    Koin's Monopolization Claim Rests on an Implausible Single-Brand Aftermarket**

7          Koin's monopolization claim should be dismissed because Koin's "Everi-Casino Digital-

8   Wallet Aftermarket" is invalid as a matter of law.  To begin, Koin appears to ask this Court to be

9   the first to recognize a single-brand aftermarket even though there has been no purchase in the

10  alleged foremarket, much less a purchase from the alleged monopolist.  That ask violates binding

11  precedent, which requires a "prior *purchase* of a durable good in a *foremarket*."  *Epic*, 67 F.4th at

12  976 (first emphasis added).  And that purchase must be from the alleged monopolist under the

13  Supreme Court's decision in *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451 (1992).

14         In *Kodak*, the plaintiffs claimed that Kodak adopted anticompetitive practices that forced

15  purchasers of Kodak photocopiers (in the foremarket) to purchase replacement parts and services

16  only from Kodak (in the aftermarkets).  504 U.S. at 455–58.  In assessing whether the plaintiffs

17  could pursue a tying claim based on the aftermarkets, the Supreme Court tethered its analysis of

18  the "information and switching costs" to consumers' purchase of Kodak photocopiers in the

19  foremarket.  *Id.* at 473.  As to information costs, the Court examined whether purchasers of Kodak

20  photocopiers could "engage in accurate lifecycle pricing" "at the time of purchase."  *Id.*  And as

21  to switching costs, the Court examined whether "the heavy initial outlay for Kodak equipment"

22  meant purchasers were unlikely to "chang[e] equipment brands" in response to increased prices in

23  the aftermarket.  *Id.* at 476–77.  Had consumers not purchased photocopiers from Kodak in the

24  foremarket, the analysis of information and switching costs would have been incomprehensible.

25         The Ninth Circuit has recognized a single-brand aftermarket in only one published case.

26  *Newcal*, 513 F.3d at 1046–51.  There, consumers leased copiers and purchased service contracts

27  from the defendant in the foremarket, and shopped for replacement equipment and "lease-end

28  service" in the aftermarket.  *Id.* at 1043–44, 1049.  In analogizing to the aftermarket in *Kodak*,

1   "[t]he boundaries of [which] … depended on the consumers' prior decision to purchase a Kodak-

2   brand product," the court held the defendant could restrain trade in the aftermarket because its

3   consumer contracts in the foremarket gave it "special access to its consumers" in the aftermarket,

4   and "market imperfections" "prevent[ed] consumers from realizing that their choice in the initial

5   market … impact[ed] their freedom to shop in the aftermarket." *Id.* at 1048, 1050–52.

6       This case is nothing like *Kodak* or *Newcal*. Patrons do not purchase a durable good in the

7   alleged foremarket for "U.S. land-based casinos" (Compl. ¶ 176), because no purchase is necessary

8   to enter a casino and gambling is not a durable good. Nor do patrons make any purchase from

9   Everi in the alleged foremarket. Thus, Everi has done nothing to "lock-in" patrons through high

10  information and switching costs "such that competition in the foremarket cannot discipline

11  competition in the aftermarket[]." *Epic*, 67 F.4th at 976. Because Everi does not participate in the

12  foremarket, there is no "responsive connection between aftermarket prices and foremarket sales."

13  *Id.* Even in a competitive foremarket where consumers could "engage in accurate lifecycle

14  pricing" and "switching costs" were low (*Kodak*, 504 U.S. at 473), Everi would not lose any, much

15  less "a substantial number[,] of customers" in the foremarket in response to anticompetitive

16  conduct in the aftermarket—since Everi is not in the foremarket. *Epic*, 67 F.4th at 976–77.

17      Koin says requiring a purchase in the foremarket from the alleged monopolist is the type

18  of "categorical rule" that *Epic* rejected, but that is incorrect. Opp. at 25–26. *Epic* expressly held

19  there *are* categorical rules for defining a single-brand aftermarket. It held that "precedent requires

20  that consumers … [make a] purchase" in the foremarket (67 F.4th at 973), and that a plaintiff

21  alleging a single-brand aftermarket "*must* show": (1) "the challenged aftermarket restrictions are

22  'not generally known' when consumers make their foremarket purchase"; (2) "'significant'

23  information costs prevent accurate life-cycle pricing"; (3) "'significant' monetary or non-monetary

24  switching costs exist"; and (4) "general market-definition principles regarding cross-elasticity of

25  demand do not undermine the proposed single-brand market." *Id.* at 977 (emphasis added).

26      Koin makes no effort to address the first or fourth requirements. As to the second, Koin

27  alleges "patrons are not advised" of the terms of using Everi's digital wallet (Compl. ¶ 172), but it

28  does not say patrons would face difficulty obtaining information. For instance, Koin does not

14

1    allege acquiring pricing information is "difficult" or "expensive," or that pricing is "customer-

2    specific" or subject to "discriminat[ion] between sophisticated and unsophisticated consumers."

3    *Kodak*, 504 U.S. at 473–75.  Rather, a patron could find out within minutes of walking into a casino

4    which cash-access systems and digital wallets are available—before they have spent a dollar at the

5    casino.  *See Hicks*, 897 F.3d at 1121 (relying on "judicial experience and common sense").

6    Koin next argues (but did not allege) that "[t]he cost of sacrificing complimentary meals,

7    hotel rooms, gaming credits, and show tickets" make switching from one casino to another "too

8    costly."  Opp. at 25.  That is absurd.  Patrons do not have to relinquish perks to visit another casino,

9    and Koin does not allege all or even a majority of patrons have accumulated perks.  These perks

10   also are rewards casinos grant to patrons, and thus do not represent the "initial outlay" for a good

11   in the foremarket that would have to be repaid to use another casino.  *Kodak*, 504 U.S. at 477.

12   At bottom, this is not one of the "extremely rare" cases where a single-brand aftermarket

13   may exist (*Psystar*, 586 F. Supp. 2d at 1198), so Koin's monopolization claim should be dismissed.

14   **E.    Koin's Complaint Must Be Dismissed Because It Fails to Allege Antitrust Standing**

15   Koin also fails to allege antitrust standing (*City of Oakland v. Oakland Raiders*, 20 F.4th

16   441, 448 (9th Cir. 2021)), which requires that the injured party be a participant in the same market

17   as the alleged malefactors.  *Bhan v. NME Hosps., Inc.*, 772 F.2d 1467, 1470 & n.3 (9th Cir. 1985).

18   As explained in the Motion, Koin alleges the Koin Wallet is a "general-purpose wallet" (Compl.

19   ¶ 85), yet defines the Digital-Wallet Markets as comprising "providers of gaming digital wallets—

20   as distinct from general-purpose digital-wallet providers" (*id.* ¶ 160).  As a provider of a "general-

21   purpose wallet," Koin is *not* a participant in the market it alleges has been constrained.  Although

22   Koin cites facts outside the Complaint, "the Court is obligated to take Plaintiff's word at face value

23   at this stage."  *Massaro v. Beyond Meat, Inc.*, 2021 WL 948805, at *6 (S.D. Cal. Mar. 12, 2021).[10]

24                            **III.    CONCLUSION**

25   Defendants' Motion to Dismiss should be granted.

26   ---

27   [10]  Koin does not dispute that its Section 2 claims fail if the Complaint fails to plausibly allege a
     relevant market or anticompetitive conduct under Section 1.  Mot. at 21–22; Opp. at 23.  Nor does
     Koin dispute its state-law antitrust claims rise and fall with its federal claims.  *See* Mot. at 27; Opp.

28   at 29 n.20; *see also Williams v. I.B. Fischer Nev.*, 999 F.2d 445, 448 (9th Cir. 1993); *Bayer
     Schering Pharma AG v. Watson Pharms., Inc.*, 2010 WL 11578470, at *5 (D. Nev. Mar. 31, 2010).

DATED: May 27, 2025

GIBSON, DUNN & CRUTCHER LLP                    DICKINSON WRIGHT PLLC

/s/ Samuel G. Liversidge                        /s/ John P. Desmond
Samuel G. Liversidge (*pro hac vice*)          John P. Desmond (SBN 5618)
S. Christopher Whittaker (*pro hac vice*)      Michael N. Feder (SBN 7332)
333 South Grand Avenue                          Gabriel A. Blumberg (SBN 12332)
Los Angeles, CA 90071                           100 West Liberty Street, Suite 940
Telephone:  213-229-7000                        Reno, NV 89501
Facsimile:  213-229-7520                        Telephone:  775-343-7500
sliversidge@gibsondunn.com                      Facsimile:   844-670-6009
cwhittaker@gibsondunn.com                       jdesmond@dickinsonwright.com
                                                mfeder@dickinsonwright.com
GIBSON, DUNN & CRUTCHER LLP                     gblumberg@dickinsonwright.com
Rachel S. Brass (*pro hac vice*)
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone:  415-393-8200
Facsimile:  415-393-8306
rbrass@gibsondunn.com

*Attorneys for Defendants*
*EVERI HOLDINGS INC. and*
*EVERI PAYMENTS INC.*

### CERTIFICATE OF SERVICE

I do hereby certify that on the 27th of May 2025, a true and correct copy of Defendants' Reply in Support of Motion to Dismiss Plaintiff's Complaint and Memorandum of Points and Authorities in Support Thereof was served via the United States District Court CM/ECF system to counsel of record receiving electronic notification.

DATED: May 27, 2025

/s/ *Dianne M. Kelling*
Dianne M. Kelling

17